GRASSELLI CHEMICAL COMPANY *v.* SIMON.

[No. 12,450. Filed December 17, 1925. Rehearing denied March 31, 1926.]

1. MASTER AND SERVANT.—*Whether an employee's death for which compensation is sought resulted from an accident is a question of fact for the Industrial Board.*—In a proceeding before the Industrial Board for compensation under the Workmen's Compensation Act for the death of an employee, whether the deceased came to his death by accident was a question of fact for the Industrial Board. p. 332.

2. MASTER AND SERVANT.—Evidence *held* sufficient to sustain a finding of the Industrial Board that deceased workman came to his death by accidental drowning. p. 332.

3. MASTER AND SERVANT.—*Coroner's verdict and evidence incompetent evidence as to cause of death, but admission was held harmless.*—In a proceeding before the Industrial Board for compensation for the death of an employee, the coroner's verdict and the evidence at the inquest were incompetent, but, there being competent evidence sufficient to sustain the finding of the Industrial Board, the admission of such evidence was *held* harmless. p. 332.

4. MASTER AND SERVANT.—An objection to the jurisdiction of the Industrial Board must be made before the board in order to contest the matter on appeal. p. 332.

5. MASTER AND SERVANT.—*Employer who contested its liability, before Industrial Board cannot question jurisdiction of board for first time on appeal.*—An employer who contested its liability on a claim for compensation before the Industrial Board without raising the question of jurisdiction over the claim cannot, on appeal, raise the question that the board had no jurisdiction because there had been no showing that the parties had been unable to agree as to the liability. (*In re Moore,* 79 Ind. App. 470, distinguished). p. 332.

From Industrial Board of Indiana.

Application for compensation under the Workmen's Compensation Act by Mary Simon for the death of Joseph Simon, opposed by the Grasselli Chemical Company, employer. From an award for claimant, the employer appeals. *Affirmed.* By the court in banc.

*Gavit, Hall, Smith & Gavit, Ibach, Gavit, Stinson & Gavit, Owen S. Boling* and *M. H. Miller,* for appellant. *Moe N. Oppman, J. H. McNeff* and *George E. Hershman,* for appellee.

ENLOE, P. J.—On and for some time prior to February 24, 1923, one Joseph Simon, the husband of appellee and with whom she was living, was an employee of appellant. On that date, said Simon came to his death by drowning in the Calumet river, leaving the appellee

as his sole dependent. The widow filed her claim asking for an award of compensation against the employer and such proceedings were had in the matter of said claim that the full Industrial Board, by a majority of its members, made a finding that the said Joseph Simon came to his death by an accident arising out of and in the course of his employment, and awarded compensation to said widow, from which award this appeal is prosecuted.

Appellant's first contention is, that said award is contrary to law, because there is not sufficient evidence to sustain the above noted finding. This contention necessitates a consideration of the evidence.

There is competent evidence in the record sufficient to establish directly the following facts: The morning of February 24, 1923, was cold and a strong wind was blowing; the deceased had suffered the loss of one eye and the sight of the other eye was impaired to the extent that, while he had sufficient vision to go to and from his work, he could scarcely recognize an individual face; that he left his home at about six o'clock a. m. of the morning in question, which was his usual time for starting to his work; that at the time he left his home, he was in his usual good health and nothing unusual was observed in his manner or appearance; that he "checked in" at the gate at which employees entered the grounds of the appellant company at the usual time and received his check as an employee; that about eight o'clock of the morning in question, the body of said Simon was found in the Calumet river; that situate on the bank of said river, near where the body was found, and on the premises of appellant, was a comfort station, erected and maintained by the appellant; that the dinner pail of deceased and the metal check which he received at the gate upon entering the grounds of appellant on that morning were found near the comfort sta-

tion, the check lying on the top of said dinner pail; that the overcoat of the deceased was found a short distance to the east and south of the dinner pail, the coat being on the bank of the river and near to the water's edge; that the general course of said river at that point is east and west; that said comfort station is built partly out over the water of the river and is about eight feet long, east and west, by four feet wide, and is approached by a walk way from the top of the river bank; that a piece of lumber about four inches wide was placed in said comfort station and used by the employees as a seat, the space between said seat and the back side of said building being entirely open and of the width of sixteen inches; that the sides of said station were enclosed down to the water and that the water under the rear portion of said building was some three or four feet deep; that this station was flushed and cleaned out once each week; that it was very frequently in bad condition and that men would not take their coats and dinner pails therein but leave them outside on the ground.

There was also offered in evidence a map, blue print, of the grounds of appellant company involved in this cause, on which are shown the location of the entrance gate, the comfort station in question, the building in which the deceased was employed, various railroad tracks and switches, roadways, crossings, power plant and various other buildings. This map purports to have been drawn to a scale and shows the building in which the deceased was employed as being located east and a little to the north of the entrance gate and at a distance therefrom of about 1,600 feet, in a direct line; it also shows the location of the comfort station involved as being to the south and east of said gate and at a distance therefrom of about 1,000 feet, in a direct line; also, a comfort station is shown as being located about

100 feet east of the building in which the deceased was employed.

On these facts, the appellant contends that the evidence not only fails to sustain the finding of the board, but that it shows that the deceased was not, at the time he came to his death, at a place where he could reasonably have been expected to be, that he had gone entirely out of his way in going to said comfort station, if he went there for the purpose of using the same, which appellant denies. It is the theory of the appellant that the deceased came to his death by suicide, while it is the theory of appellee that he came to his death by accidental drowning.

On the said map in evidence in this case, two routes have been marked as ways for travel, leading from the entrance gate to the building in which the deceased was employed. One of these routes has been marked "logical," and the other "optional." The route marked "optional" is the one supposedly taken by the deceased, and this route brought him to within about 200 feet of the comfort station on the river bank while he was yet at a distance of about 1,000 feet from his place of work. This map also shows that for the deceased to have taken the route marked "logical," and which route appellant insists should have been taken, he would have been under the necessity of crossing at least two lines of railroad tracks and switches, seven tracks in all, and to have crossed these tracks at places where there were no regular crossings, while by following the route marked "optional," although he would have to cross the same number of tracks, the places where he would cross these tracks were, as indicated by said map, roadway crossings. When we consider the condition of the sight of the deceased and his ability to get about, we are impressed that the route designated as "optional," was, in

fact, the logical route for him to take in going from said entrance gate to the building in which he was employed. We also note that the record is silent as to the route of travel usually taken, if there was any such usual route, by the deceased or by other persons employed in the same building with deceased, in passing from the entrance gate to the said building.

Whether the deceased came to his death by accident was a question of fact for the Industrial Board. If he came to his death by accidental drowning, then, 1, 2. under the facts of this case, that such accident arose out of and in the course of his employment will not admit of question. The finding in this case was that he came to his death by accident and we think that such was a reasonable inference.

The appellant next urges that this cause should be reversed because of the admission of incompetent evidence. At the hearing, the verdict of the coroner 3. of Lake county, who held the inquest upon the body of the deceased, and also the testimony taken by the coroner upon such inquest were offered and read in evidence over the objection of the appellant. These were incompetent in this case and should not have been admitted in evidence. But, as there is other competent evidence in the record sufficient to sustain the finding herein, we cannot, under the well-settled rule, reverse this case because of such error; it was harmless. *Shira* v. *State, ex rel.* (1918), 187 Ind. 441, 119 N. E. 833; *Bowers* v. *Headen* (1853), 4 Ind. 318.

Finally, the appellant insists that this cause must be reversed because there is no finding, and no evidence tending to show, that the parties had made an 4, 5. effort to settle this matter and had failed, and that therefore the Industrial Board was without jurisdiction. He relies upon the case of *In re Moore* (1923), 79 Ind. App. 470, 138 N. E. 783, to sustain his

contention. In this case, the appellant has, from the beginning of this proceeding, contested the matter of its liability. Had it, when it first appeared before the single member of the Industrial Board, filed an answer based on the matter now urged, and thereby raised the question as to whether or not there was a disagreement between the parties as to the question of paying compensation, quite a different question would be presented for our consideration. But it appeared and offered its evidence and, from an adverse finding and award, it asked for a review by the full board, and it now appeals to this court, still contesting its liability. No question as to the jurisdiction of the Industrial Board was made below, and it cannot be made for the first time on appeal. *Dye & Son* v. *Nichols* (1923), 81 Ind. App. 13, 141 N. E. 259; *Eureka Block Coal Co.* v. *Wells* (1925), 83 Ind. App. 181, 146 N. E. 869.

We find no reversible error, and the award is therefore affirmed.