GEORGE F. HINRICHS, INCORPORATED, ET AL. *v.* UNITED
STATES BANK AND TRUST COMPANY ET AL.

[No. 12,973. Filed December 4, 1928.]

*Miller, Bretzfelder & Boardman, York & Rees, Heaton & Heaton* and *Dan C. Flanagan, for appellants.*

*Albert H. Cole, Holman, Bernetha & Miller* and *Fansler & Douglass,* for appellees.

McMAHAN, P. J.—This action was commenced by the United States Bank and Trust Company of Rochester, Indiana, hereinafter referred to as "trust company," against George F. Hinrichs, Incorporated, herein referred to as "appellant," to recover an indebtedness alleged to be owing the plaintiff by appellant on account of certain drafts drawn by Henry Pfeiffer, since deceased, on appellant, and which the latter refused to pay. The First National Bank and the City National Bank, of Logansport, as assignees of Henry Pfeiffer, were made garnishee defendants. Said garnishee banks, in their individual capacity, each claiming appellant was indebted to it on drafts drawn by Pfeiffer on appellant, and which each of them had paid, filed under in the original attachment and garnishment proceeding. The original complaint and each file-under complaint were, in substance, the same, except as to dates and amounts.

The facts were found specially and are, in substance, as follows: The plaintiff, as well as each file-under plaintiff, is a bank doing business in this state. Appellant is a New York corporation, engaged in buying and selling poultry and similar produce on its own account and as a broker and commission merchant in New York City. Henry Pfeiffer, now deceased, was engaged in buying and selling poultry, eggs and other produce as a broker from 1914 to December 10, 1923, and doing busi-

ness at Logansport under the name of the "Pfeiffer Sales Company." On December 10, 1923, Pfeiffer made a general assignment for the benefit of his creditors to the First National Bank and to the City National Bank of Logansport, under the law of this state, since which time said banks have been acting as his assignees. Pfeiffer died December 19, 1923. At the time of his assignment, and for a long time prior thereto, Pfeiffer was the principal stockholder in three corporations which were engaged in buying, selling and shipping poultry and other produce, and, during all that time, he acted as sales agent for such corporations. In all cases where Pfeiffer shipped produce to appellant, he acted as agent for one of said corporations, and, in each instance, appellant received the produce so shipped as a broker or commission merchant. More than two years before December 19, 1923, Pfeiffer and appellant agreed with each other that Pfeiffer, either in his own name or in the name of Pfeiffer Sales Company would ship and consign to appellant poultry, the bills of lading to be mailed direct to appellant; that Pfeiffer should, in his own name or in the name of the sales company, draw a draft upon appellant, directing appellant to pay a bank to be selected by Pfeiffer the amount of the draft, it being agreed that the amount of each draft should approximate the value of the produce shipped, which drafts appellant agreed to accept and pay upon presentation, and to receive the shipments, and, after selling the same, to charge against the amount received from the sale of each shipment the amount paid on this draft, commissions, cost of storage and cartage, and credit the account of Pfeiffer with the balance, and, if there was a deficit, to charge the same against Pfeiffer, and, on an accounting, the party found to be owing the other party should pay such other party the amount due and owing. For more than two years prior to December 10, 1923, Pfeiffer had maintained a checking account

with each of the above-named banks. During that time, Pfeiffer, along with other items, deposited drafts drawn by him on appellant in favor of the bank in which the same were deposited, and, in each instance, the amount of the draft so deposited was placed to the credit of Pfeiffer in his checking account, deposits of such drafts being made several times each month in each of said banks. Each and all of the drafts so deposited were paid by appellant upon presentation, except the drafts described in the several complaints and hereinafter described.

At the time Pfeiffer began depositing drafts drawn on appellant in each of the plaintiff banks, he informed each of them that he desired to deposit drafts drawn upon appellant in his checking account, and that he desired to have immediate credit for such drafts on his checking account, and that said drafts would be drawn against and upon the credit of produce shipped to appellant, that appellant had agreed to honor and pay said drafts upon presentation, and that bills of lading for the merchandise against which the drafts were drawn were not attached to the drafts because the goods were perishable and delay might result if the bills of lading were attached to the drafts. That thereupon said banks and each of them agreed to receive said drafts as a deposit, including those involved in this action, and credit the checking account of Pfeiffer with the amount of said drafts when they were delivered to the banks. On November 20, 1923, Pfeiffer deposited with the trust company a draft drawn on appellant in favor of the trust company for $2,750. On November 22, 1923, he deposited with the trust company another draft drawn on appellant in favor of the trust company, for $1,500. These drafts were immediately credited upon the checking account of Pfeiffer. Each of said drafts was drawn against a certain consignment of merchandise. In the regular course of business,

the trust company forwarded said drafts to a bank in Chicago, Illinois, for credit upon its account, and said bank forwarded the drafts to a bank in New York City, and, in the regular course of business, they were presented at the office of appellant, in New York City. When the drafts were presented, appellant requested that they be held for the arrival of the goods against which they were drawn. Other drafts were about the same time drawn by Pfeiffer against appellant and deposited with the First National and the City National banks and under the same circumstances, the amount of each draft being placed to the credit of Pfeiffer, in his checking account. Each of said drafts, like the ones deposited with the trust company, was forwarded to a bank in New York City for collection, and, in each instance, when they were presented to appellant for collection, it requested that they be held for the arrival of the goods. One of the drafts so deposited in the First National Bank was for $2,750 and the other one for $350. The one deposited with the City National Bank was for $2,350.

When the merchandise against which the several drafts had been drawn arrived in New York, it was received by appellant and sold, and the proceeds from such sales retained by appellant, after which, the drafts were again presented to appellant for payment, and payment being refused, said drafts were returned and have not been paid. After the drafts were first presented to appellant for payment, appellant, with knowledge of the amount of each draft and of the fact that each draft had been drawn against a certain shipment of goods, accepted the goods, sold them, and retained the proceeds derived from such sales. In each of said transactions, when Pfeiffer drew and deposited said drafts, it was his intention and the intention of each bank, that the bank, in accepting the several drafts and crediting the amount on Pfeiffer's account, should have an assignment of the produce

against which each was drawn. The court also found the amount due each of the banks on account of said drafts and all facts necessary to sustain the proceedings in attachment and garnishment, it being found that the amount of indebtedness of the garnishee defendants as assignees, to appellant could not at that time be determined.

Upon these facts, the court stated separate conclusions of law to the effect that each of the banks was entitled to recover from appellant the amount of the drafts so accepted by each of them, with six per cent. interest from the time payment was refused, and that they were entitled to be paid out of the money the assignees of Pfeiffer had in their hands owing to appellant, and, if they did not have sufficient money with which to pay said banks in full, they should be paid pro rata.

A demurrer was sustained to the third paragraph of the several answers of appellant and which were addressed to the several complaints. These answers were, in substance, the same, and contained a recital of the facts relating to the business dealings between appellant and Pfeiffer, as appellant alleged the facts to be; that, as a result of such business, Pfeiffer was indebted to it in a large amount as evidenced by his promissory notes, and that appellant, upon receipt of the produce mentioned in the several complaints, sold the same and applied the proceeds derived from such sales on the notes given it by Pfeiffer.

The facts alleged in these answers were admissible under the general denial and the record shows that evidence was introduced by appellant to prove the facts as alleged in these answers. The court did not err in sustaining the demurrers to these answers.

The sixth paragraph of answers sets out the facts, in substance, the same as were alleged in the third para-

graph, and, in addition thereto, alleges that before it had any notice or knowledge of any claim that Pfeiffer was owing either of the plaintiffs, it sold the produce, and asked that the amount due it, because of the indebtedness of Pfeiffer to it, be set off against the amount due and owing plaintiffs. The seventh paragraph of answers was, in substance, the same as the third. Demurrers to the sixth and seventh paragraphs of answers were sustained. If this had been an action by the assignees against appellant, there would be merit in appellant's contention that it had a right to plead an indebtedness of Pfeiffer to it, and ask that the amount of such indebtedness be set off against any sum it might owe the assignees. This is not an action by the assignees. It is an action by the several banks in their individual capacities, in which each is claiming that certain funds in the possession of appellant belonged to it, by virtue of an equitable assignment of the produce sold. Under the facts alleged in the complaint, appellant was not entitled to have the money in its possession applied on the notes of Pfeiffer held by it. There was no error in sustaining the demurrers to either the sixth or seventh paragraph of answers.

Appellant does not challenge the correctness of the conclusions of law to the effect that the plaintiffs were entitled to recover the amounts stated in the several conclusions of law. It has attempted to challenge the amount of the recovery, under a specification in its motion for a new trial that the amount of recovery is too large. Where the facts are found specially, and where the facts are correctly found, the correctness of the amount of the recovery must be raised by an exception to the conclusions of law. If the facts found relating to the amount of recovery are not sustained by the evidence, the finding of facts must be challenged by a motion for a new trial on the ground

that the decision or finding of the court is not sustained by sufficient evidence. No question is presented as to the amount of the recovery.

Appellant calls attention to the special finding of facts and says there is no evidence to support many of the facts as found by the court. Appellant makes no attempt to point out the insufficiency of the evidence to sustain any finding. It contents itself with the bare statement that there is no evidence to support the several findings, with a citation to the place in the record where the findings can be found. Appellees, in their briefs, have called attention to certain evidence which they say is sufficient to sustain each of the challenged findings. It would unduly extend this opinion if we were to set out the several findings and the evidence tending to support them. We have carefully read appellant's recital of the evidence as set out in its brief and, in addition thereto, we have carefully read the evidence as set out in the bill of exceptions, and have no hesitancy in holding that the evidence and the inferences properly deducible therefrom are sufficient to sustain all the material facts found by the court.

Appellant next complains of the action of the court in allowing certain witnesses, who were officers of the several banks, to state what was said to them by Pfeiffer, in connection with the handling of the several drafts, as to why the bills of lading could not be attached to the drafts. The substance of the testimony so given was, that Pfeiffer told the officials of the banks, at the time he was making arrangements to have the drafts cashed and the amounts of the drafts placed to his credit, that he had made arrangements with appellant to cash the drafts and to have the bills of lading sent directly to appellant so as to avoid any possible delay in selling the produce because of any delay that might happen if the bills of lading were attached to the drafts, as

delays might result in the produce being injured because of its perishable nature. Without entering into a review of the evidence, it is sufficient to say that the evidence is ample to warrant a finding that Pfeiffer's finances were and for several years had been such that it was necessary for him to realize on drafts drawn on appellant against shipments made to appellant; that appellant knew this and agreed with Pfeiffer that he could draw on appellant when he made a shipment to it, and that, instead of attaching the bills of lading to the drafts, they should be mailed directly to appellant who, upon the receipt of such bills of lading, would sell the produce, and out of the proceeds pay the drafts upon presentation, and that appellant knew Pfeiffer was borrowing money from the banks upon the theory and belief that each draft was drawn against a certain shipment. In other words, the evidence was sufficient to justify the court in finding that appellant knew there was an equitable assignment of the produce to the several banks and that it received the produce and sold the same with knowledge of such assignments and that, as a consequence thereof, appellant held the proceeds of such sales in trust for the banks cashing the drafts for Pfeiffer. There was no error in the admission of this testimony.

There is evidence that the $1,500 draft drawn in favor of the trust company was presented to appellant for payment November 25, and was protested for want of payment. The trust company, in the usual course of business, sent this draft through the Foreman National Bank, at Chicago, Illinois, to a bank in New York City for collection. On November 27, the Foreman bank sent the trust company a telegram to the effect that its New York correspondent had wired that the draft was unpaid and had been handed to a notary; that the goods had not arrived; that drawee requested it be held for arrival of goods and asking for instructions.

This telegram, over the objection that it was hearsay, was introduced in evidence. Appellant contends this was reversible error. Appellant has not called attention to anything in this telegram that was predjudicial. There is ample evidence to show that this draft, as well as all the other drafts in controversy, had been presented for payment and payment refused. On December 1, 1923, appellant wrote a letter to Pfeiffer, telling him it had not paid his drafts, and referred to the fact that Pfeiffer had talked to the vice-president of the appellant the day before, and that they "were obliged to hold up these drafts," and expressing the hope that Pfeiffer would be able to take care of them. Two days later, appellant wrote another letter to Pfeiffer, recognizing the receipt of a letter from the latter dated December 1, and, after calling attention to the fact appellant had written him, and presuming that letter had been received and that Pfeiffer fully understood the situation, appellant said "we will be obliged to let these drafts be returned," and expressed the hope that Pfeiffer had made arrangements to take care of them. The letter from Pfeiffer referred to the fact that Pfeiffer had been informed the $1,500 draft had been returned and stated that he had asked the bank to start it through again, and after mentioning the shipments made the week before, asked appellant to take care of the drafts drawn on those shipments. The certificate of protest signed by the notary stated that the $1,500 draft had been presented to appellant for payment and payment refused. The telegram referred to in appellant's letter of December 1, was dated November 28, and, among other things, stated that appellant had been obliged to hold up the drafts and was not in a position to take care of them. Several months after the drafts in question had been protested and returned, a lawyer representing the three

banks went to New York, taking all the drafts with him, had a conversation with the president of appellant at its place of business and there demanded payment of the drafts, which was again refused.  This case was tried by the court without a jury, and there being sufficient other competent evidence to sustain the finding of the court, the introduction of the telegram in question in evidence, if error, would not justify a reversal of the judgment. There is no claim that appellant was prejudiced by the action of the court, and we hold there was no reversible error in allowing the telegram to be read in evidence.

The $2,750 draft drawn in favor of the First National Bank of Logansport, with all of the indorsements on the back thereof, was introduced in evidence.  Among the indorsements is one purporting to have been made by the New York bank to which it was sent for collection, indicating it had been presented for payment and had not been paid, and following the word "reason" appeared the words: "Hold for arrival." There was also a memorandum marked Exhibit 30, which indicated that the draft had been presented for payment and had not been paid.  In this memorandum, as in the indorsement on the back of the draft, appeared the words: "Reason:  Hold for arrival."  Exhibit 34 was a memorandum attached to the $350 draft by the New York bank to which it was sent for collection and, in substance, is the same as Exhibit 30.  These two exhibits were read in evidence, and appellant contends the admission of each of them amounts to reversible error, because, as it says, these exhibits are hearsay. These memoranda were made by the banks in the regular course of business, and, in view of the fact that these drafts, as well as all other drafts involved in this appeal, were presented to appellant for payment and payment refused, we fail to see how it was harmed by the admission of these two exhibits in evidence.  Indeed,

appellant makes no attempt to show that it was harmed by the action of the court. No reversible error is shown in the admission of either of these exhibits.

Judgment affirmed.