SCHEMMEL *v.* HILL, RECEIVER.

[No. 13,448. Filed January 16, 1930. Rehearing denied March 12, 1930. Transfer denied May 14, 1930.]

374

F. S. *Caldwell* and *Eichhorn, Gordon & Edris*, for appellant.

J. W. *Macy* and *William O. Barnard*, for appellee.

McMAHAN, J.—This action was commenced by the Atlas State Bank of Union City against Robert C. Schemmel to rescind and set aside a deed from the defendant to the plaintiff and to recover the purchase price of $25,000 with interest paid the defendant therefor. From a judgment for plaintiff, the defendant appealed, and Roll L. Hill, having been thereafter appointed receiver for the bank, was, on his motion, substituted and made appellee herein, in place of the bank.

The complaint alleges: That, while the defendant was a director and vice-president of the bank, he induced it to purchase the real estate from him for $25,000, when he knew it was not worth more than $15,000; that the real estate so purchased was not necessary for the bank's business, was not purchased for any of the uses or purposes recognized by the statute, and was not worth the price paid; that the defendant, in selling the property to the bank and in accepting the $25,000 therefor, was not acting for the interest of the bank, but used his position as director to promote his own financial interest; and that the bank was insolvent, was in process of liquidation, and needed the $25,000 to pay its depositors and creditors.

A demurrer to the complaint was overruled, after which the defendant filed an answer in denial, ratification by the stockholders, and ratification and acquiescence by the directors.

The facts were found specially, and are, in substance, as follows: Appellee, a bank of discount and deposit,

was organized under the laws of this state, March 3, 1906; its place of business was Union City; on October 15, 1923, C. C. Fisher, Robert C. Schemmel, William W. McClure, Charles J. Gunckel and Thomas Dunn, Jr. were the sole and only members of the board of directors, Fisher being president of the board and Schemmel vice-president; Schemmel, on said day, was the owner of a building known as the "Fisher Building," located across the street from the bank building, and which he, a few days before, had purchased from Fisher; the directors, on that day, at a regular meeting, adopted a resolution authorizing the president and cashier of the bank to sign a contract for the purchase of said building from appellant, on or before March 1, 1924, for $25,000; all of said directors, including Schemmel, who was the defendant below and appellant herein, were present at said meeting and voted for the adoption of said resolution; at the next meeting of the board, held November 1, 1923, the board adopted a resolution authorizing the president and cashier to consummate a contract with appellant for the purchase of his building by accepting a warranty deed therefor from appellant and by delivering to him certain interest-bearing notes then owned by the bank, and which were of the market value of $25,000; appellant was present at each of said meetings and voted for each of said resolutions; he seconded the motion for the adoption of the resolution of November 1, and was in the director's room at each of said meetings when the resolutions were under consideration by the board; immediately after the meeting of November 1, Fisher and the cashier and appellant signed a contract for the purchase and sale of such building, and, on the next day, appellant, by warranty deed, conveyed the same to the bank; this deed was accepted by the bank, and, in payment therefor, appellant received from appellee the notes mentioned in the contract, of the value of $25,000, the pro-

ceeds of which, with seven per cent interest from November 2, 1923, appellant received and appropriated to his own use; said deed was not recorded until December 15, 1924; the bank has been in possession of said building, and has collected the rents therefrom and paid taxes, insurance and for certain repairs thereon, and holds the record title thereof; such real estate had not been mortgaged to the bank nor conveyed to it in satisfaction of any debt, and was not purchased by it to satisfy any judgment, decree or mortgage held by it; the building so purchased from appellant was not constructed, equipped or furnished for banking purposes, but, for many years, had been used for business rooms, offices and living apartments, and, at the time it was conveyed to the bank, was of the fair value of $16,500; the building then occupied by the bank was ample and commodious for its use, was furnished and equipped for a bank, and the bank had a written lease therefor at a rental of $60 a month, expiring in October, 1926, which was about seven months after the expiration of the bank's charter; several years prior to October 15, 1923, the bank had leased additional room which was a part of the same building and connected with its banking house, and had remodeled, altered and equipped the same for use as a part of its banking house, and was paying a rental of $18 a month therefor; the real estate purchased from appellant was not, and never has been, necessary for the bank's business; the capital stock of the bank, at the time of such purchase, was impaired, and the bank was insolvent, with a large amount of "frozen" assets, which were worth less than par; since the expiration of its charter, the bank has been engaged in winding up and liquidating its business, and the $25,000 so invested in the property purchased from appellant is necessary for use in winding up its business; Fisher, at the time of said sale, was indebted to the bank in the sum of $29,000, to

appellant in the sum of $9,000, and to other persons in various amounts, and was then insolvent; his financial condition was such that he went to former Governor Goodrich for advice; a conference was held at the Goodrich home, at which time appellant was induced to purchase the building in question in order to avoid a financial crash which would have resulted in the closing of the bank; appellant and Goodrich agreed to and did purchase other property from Fisher, the proceeds from all such sales, including the sale of the building to appellant, were used for the purpose of raising money to pay Fisher's debts, aside from the debts he owed the bank; Fisher conveyed the balance of his property to appellant as trustee, for the protection of his debts to the bank; the Fisher building, so conveyed to the bank by appellant, was not a part of the trust assets; appellant, in payment for said building, paid Fisher $16,000, and canceled a debt of $9,000, which Fisher then owed appellant; Fisher applied the $16,000 to the payment of debts other than his debt to the bank; appellant, when he purchased the Fisher building, knew it was not worth in excess of $16,500, and a few days after he paid Fisher for the building, he gave Fisher $1,000 as a present, and, at the next meeting of the board of directors, held October 15, 1925, appellant offered the building to the bank for $25,000; appellant did not inform the other directors of the circumstances under which he acquired the building from Fisher; Fisher and appellant were the only members of the board of directors who then knew of the facts concerning the transaction, the facts relating thereto not being disclosed to or learned by the other members of the board, nor did any of the other members know or learn that appellant had made a present of $1,000 to Fisher; the purchase of the building by the bank was not for the best interest of the bank, and appellant did not sell the property to the bank for the purpose of furthering

its interests; he made the sale to the bank without making a full and fair disclosure of the facts, and for the purpose of advancing his own interest; the board of directors did not change until May 23, 1924, when Gunckel resigned; Dunn and appellant resigned from the board January 9, 1925, and Fisher resigned September 4, 1925; on September 21, 1925, the new board of directors ordered an investigation of the purchase of such building, and, on November 11, 1925, placed the facts in the hands of the bank's attorney, with a view of rescinding the purchase, and, on February 1, 1926, by resolution, ordered the execution of a conveyance of said building to appellant, and ordered that such conveyance be tendered to appellant with a statement of the receipts and disbursements on account thereof, and a tender of the net amount in the hands of the bank on account of said building, and also ordered that a demand be made of appellant to restore the bank to its former position by delivering to it the securities received by appellant for said building, with interest, or the equivalent in cash, and, on February 8, 1926, by resolution, the then directors declared the purchase of the real estate from appellant *ultra vires* and without authority, and again ordered its officers to execute a deed therefor to appellant, to account to him for all rents and income received therefrom and to demand from him the repayment of the sum of $25,000; on February 27, 1926, a warranty deed properly executed by the bank was tendered to appellant, with an itemized statement of the receipts and disbursements on account of the building, with a tender of $2,000 in cash, that being the net income received by appellee from the building, and demanded the return of the $25,000, which conveyance appellant refused to accept, and he also refused to restore the securities so turned over to him, or the cash equivalent thereof.

On the trial of the cause, the bank again offered in

open court to make an accounting of the receipts and disbursements because of the building and offered to pay over to appellant $3,879.83 on that account, upon the granting of the relief prayed for in the complaint. The court also found that the bank had disaffirmed the contract seasonably and that appellant had suffered no loss or damage or change of position due to said purchase of such real estate by reason of the bank's failure to repudiate the transaction at an earlier date, and that neither the stockholders nor directors of the bank ever acquiesced or ratified said contract and conveyance.

Upon these facts, the court concluded that the bank was entitled to avoid the transaction, to have the same set aside, to have the $25,000, with interest from November 2, 1923, restored to it upon reconveying the property to appellant clear of all liens except taxes for 1927, and upon accounting to appellant for rents and profits to date of reconveyance, and upon payment of the net profits, amounting to $3,879.83, plus net profits since November 1, 1927, and that, if appellant would not, within 30 days, accept a reconveyance and an accounting of rents and profits, and would not restore the $25,000 with interest to the bank, the bank was entitled to a judgment for $11,077.67. Judgment was rendered accordingly.

Pending his motion for a new trial, appellant filed a motion to modify the judgment by striking therefrom the judgment for $11,077.67, and by entering in lieu thereof a judgment and decree that the transaction between the bank and himself, in which he conveyed the real estate in question to the bank, be rescinded and not binding or obligatory on the parties thereto; that the deed executed by appellant dated November 2, 1923 be canceled; that the bank recover from appellant $25,000 with seven per cent interest thereon from November 2, 1923, to March 31, 1928, in the sum of $7,675.65, or a total of

$32,675.65, less the net rents and profits of $3,879.83, the net amount of judgment being $28,795.82, and that the bank account for and pay appellant the net rent and profits received by it after November 1, 1927. This motion was sustained and the judgment was modified so as to read exactly as requested by appellant.

Appellant's motion for a new trial, the specifications of which are that the decision of the court is not sustained by sufficient evidence, is contrary to law, and the overruling of his objection to the admission of certain evidence, was overruled. The contentions in this court are: (1) That the court erred in overruling the demurrer to the complaint; (2) in overruling the motion for a new trial because of the above-named specifications; and (3) error in the conclusions of law. The questions presented by the first and last contentions are the same, and will be considered together.

The points made by appellant in support of these contentions briefly stated are: That there are no allegations of misrepresentations, fraud or overreaching on the part of appellant, nor are any facts alleged from which misrepresentations, fraud or overreaching may be inferred; that no fraud is found; that there is no finding of any unfairness or unfair dealing, and no facts found from which fraud or unfair dealings can be inferred, and that there is no finding that a majority of the board of directors was not disinterested; that there is no finding they did not act honestly and in good faith and in the belief that they were acting in the best interest of the bank; and that, under the facts found, the bank was not entitled to have the transaction set aside and rescinded.

The first proposition is that the transaction was voluntarily entered into by the bank, and, the same having been fully consummated, the bank is estopped to avoid the contract on the ground that it is *ultra vires*. In view of the conclusion we have reached,

it may, for the purpose of this decision, be conceded that the transaction was not *ultra vires*. It is settled by an unbroken line of decisions that a transaction of this character, in which a director secures an unjust advantage or deals unfairly with his corporation, may be avoided by the corporation. The facts alleged and as found by the court, without question, show that appellant secured an unjust advantage and that he did not deal fairly with the bank of which he was a trusted officer.

Appellee insists the transaction should be set aside if it was entered into in bad faith by an interested director, or if the transaction was unfair, and that there need be no showing of fraud; that the unfairness may consist merely in the interested director having acquired the best of the bargain without having made a fair disclosure of the facts; that appellant could not, in any degree, allow his official conduct to be swayed by his private interests, which must always yield to his official duty; and that a transaction between a director and his own corporation which is unfair, in which the director secures an unjust advantage, in which an antagonism between the interest of the individual and the duty of the official has resulted in the triumph of the former, is voidable at the option of the corporation. We concur in this contention of appellee.

As was said by the court in *Zaring* v. *Kelly* (1920), 74 Ind. App. 581, 128 N. E. 657, referring to a transaction between directors and their corporation: "The fiduciary relation of each of the appellants to the company was such that each had the burden of showing that he acted in good faith with the company, and those concerned with its affairs, and this burden they each failed to discharge."

"The confidential relation and the transaction having been shown, the *onus* is upon the agent to show that the bargain was fair and equitable, that he gave all the ad-

vice within his knowledge pertaining to the subject of the sale and the value of the property, and that there was no suppression or concealment which might have influenced the conduct of the principal." *Rochester* v. *Levering* (1886), 104 Ind. 562, 568, 4 N. E. 203.

In *Welliver, Rec.*, v. *Coate* (1917), 65 Ind. App. 195, 114 N. E. 775, the appellees, being interested in organizing an insurance company, by their note, borrowed money which they, in good faith, turned over to the company, with the understanding that, when the company was authorized to do business and when the money could be safely repaid to them without impairing the financial condition of the company, the same would be returned to them. The appellees, three in number, constituted a majority of the board of directors. Later, the board of directors, from time to time, in good faith, with full knowledge of the facts, made payments on the notes out of the funds of the company, and the three directors who had signed the original notes signed a renewal note when each of such payments was made. Later, a receiver was appointed for the company, and he began suit to recover from the three directors the amount the company had paid on the notes so signed by them. The three directors acted in good faith, made full disclosure, and made no attempt to conceal anything. In sustaining a judgment in favor of the defendants, based upon the theory that the transaction was honest and fair, and in discussing the law relating to transactions between directors and their corporation, the court said: "It is universally held that transactions between a corporation and its managing officers or directors, wherein money is advanced to the former by the latter, will be carefully examined by the courts to determine whether such transactions were fair and just, and whether there was any fraud or overreaching on the part of such officers or directors."

Directors of a business corporation act in a strictly fiduciary capacity. Their office is a trust. *Stratis* v. *Anderson* (1926), 254 Mass. 536, 150 N. E. 832, 44 A. L. R. 567; *Hill* v. *Nisbet* (1885), 100 Ind. 341, 353. When a director deals with his corporation, his acts will be closely scrutinized. *Bossert* v. *Geis* (1914), 57 Ind. App. 384, 107 N. E. 95. Directors of a corporation are its agents, and they are governed by the rules of law applicable to other agents, and, as between themselves and their principal, the rules relating to honesty and fair dealing in the management of the affairs of their principal are applicable. They must not, in any degree, allow their official conduct to be swayed by their private interest, which must yield to official duty. *Leader Pub. Co.* v. *Grant Trust, etc., Co.* (1915), 182 Ind. 651, 108 N. E. 121. In a transaction between a director and his corporation, where he acts for himself and his principal at the same time in a matter connected with the relation between them, it is presumed, where he is thus potential on both sides of the contract, that self interest will overcome his fidelity to his principal, to his own benefit and to his principal's hurt. He may, however, deal directly with his principal, and, if they are on equal terms, and the principal has full knowledge of the matter, the contract will be valid. The general rule seems to be that, where the contract between a corporation and one of its directors is made on the part of the corporation by a majority of the directors acting for its interest, honestly and in good faith, and with full knowledge of the matter, the contract is voidable for unfairness or fraud. *Wainwright* v. *P. H. & F. M. Roots Co.* (1912), 176 Ind. 682, 97 N. E. 8; *Wayne Pike Co.* v. *Hammons* (1891), 129 Ind. 368, 27 N. E. 487; *Stuart* v. *Larson* (1924), 298 Fed. 223, 38 A. L. R. 79; *Burnes* v. *Burnes* (1905), 137 Fed. 781.

The Supreme Court, in *Port* v. *Russel* (1871), 36 Ind. 60, 65, 10 Am. Rep. 5, quotes with approval from *Cumberland Coal Co.* v. *Sherman* (1859), 30 Barb. (N. Y.) 553: "Those who assume the position of directors and trustees, assume, also, the obligations which the law imposes on such a relation. The stockholders confide to their integrity, to their faithfulness, and to their watchfulness the protection of their interests. This duty they have assumed; this the law imposes upon them; and this those for whom they act have a right to expect. The principals are not present to watch over their own interests; they cannot speak in their own behalf; they must trust to the fidelity of their agents. If they discharge these important duties and trusts faithfully, the law interposes its shield for their protection and defense; if they depart from the line of their duty, and waste or take to themselves, instead of protecting the property and interests confided to them, the law, on the application of those thus wronged or despoiled, promptly steps in to apply the corrective, and restores to the injured what has been lost by the unfaithfulness of the agent."

Absolute and most scrupulous good faith is the very essence of a director's obligation to his corporation. The first principal duty arising from his official relation is to act in all things of trust wholly for the benefit of his corporation. Where a trustee deals directly with his beneficiary by way of purchase or sale, the transaction is presumptively invalid, and the transaction may be avoided by the beneficiary, unless he has ratified it with full knowledge. Pomeroy, Eq. Jurisp. (2nd ed.) §§955-959, 1079. To the same effect, see *Koehler* v. *Black River Falls Iron Co.* (1862), 67 U. S. 715, 17 L. Ed. 339; *Stuart* v. *Larson, supra; American, etc., Bank* v. *Ward* (1901), 111 Fed. 782, 49 C. C. A. 611, 55 L. R. A. 356.

Fisher, a director and president of the bank, was in-

solvent. He owed the bank $29,000. He owed appellant, a director and vice-president of the bank, $9,000. His other debts were about $30,000. He was faced with bankruptcy. The bank was insolvent. He went to Mr. Goodrich for advice. Arrangement was made for Fisher and Schemmel to meet Mr. Goodrich at the latter's home. This meeting was held. The financial condition of Fisher and of the bank was discussed. If Fisher's financial condition became known by the public, the bank would be seriously damaged—probably closed, and, if closed, it would not be able to pay its depositors. Some of his debts grew out of the unlawful use of trust funds. In order to avoid a financial crash, and a probable criminal prosecution, something had to be done. Mr. Goodrich suggested that Fisher dispose of certain of his property for the purpose of paying his debts other than those which he owed the bank, and that he convey all of his remaining property to Schemmel as trustee, to hold and dispose of for the purpose of paying his obligation to the bank. Mr. Goodrich suggested that appellant should take the Fisher building for $25,000, and called appellant's attention to the fact that he was vice-president and a director of the bank; that he was responsible for its condition and could not afford to have it fail; that, if appellant did not take the building at that price, the bank would have to go, but if appellant would take it at that price, Fisher's financial situation could be straightened out, otherwise not. Appellant insisted the building was not worth more than $16,000, but he was finally induced to take it at $25,000, and, in payment therefor, he gave Fisher $16,000 in cash, and canceled the $9,000 obligation of Fisher to him. There was no intimation, suggestion or understanding at this meeting that appellant was to unload this building upon the bank they were trying to save. Neither this meeting nor the financial condition

of Fisher or of the bank was made public. At a meeting of the board of directors of appellee bank, held October 15, 1923, and after Fisher had disposed of all his property, appellant, without telling the other directors anything about Fisher's financial condition, and of the meeting at the Goodrich home, and the facts connected with the transfer by Fisher of his property, offered the building to the bank for $25,000, and a resolution was passed authorizing Fisher, as president and cashier, on behalf of the bank, to enter into a contract with appellant for the purchase of the building on or before March 1, 1924. This contract was entered into, and, at the next meeting, held November 1, a motion was introduced by Bunckel and seconded by appellant, directing that the contract so entered into be consummated. This motion was adopted, Fisher and appellant each voting therefor the same as they did when the resolution authorizing the purchase was adopted. Appellant conveyed the property to the bank, and, in payment therefor, accepted and received from the bank certain notes held by the bank of the value of $25,000. At no time before this transaction was consummated did any of the directors other than Fisher and appellant have any knowledge of the Goodrich meeting, of the facts connected with the transfer of the building, by Fisher to appellant, and of the transfer of the balance of his property to appellant as trustee. By the sale to the bank of this building, which appellant knew was not worth more than $16,000, he was able to get out of the coffers of the bank the full face value of the $9,000 note he had held against an insolvent debtor. So well pleased was appellant with the transaction that he, with a feeling of charity, a few days later, made a gift of $1,000 in cash to Fisher, probably as a reward for assistance in unloading a $16,000 building on the bank for $25,000.

Appellant told the other three directors that he was

selling the building to the bank without any profit to himself. If he had disclosed the facts relating to the meeting at the Goodrich home, that, when it was suggested that he take the building, he had insisted it was not worth to exceed $16,000, that Fisher was insolvent, and, if Fisher's insolvency was known by the public, or if Fisher had been compelled to go into bankruptcy, the bank would have had to close its doors, that, by the bank taking the building off his hands at a price of $9,000 more that it was worth, Fisher would be able to pay his debt of $9,000 to appellant, could the directors have honestly believed the purchase was for the best interest of the bank, which was itself insolvent and not in need of the building for conducting its business therein? Would it not have been more probable that they would have insisted that Fisher should apply the extra $9,000 on his debt to the bank? We cannot escape the conclusion that appellant never intended to promote the interest of the bank by unloading the property onto it. His interest was to unload it on the bank in order to further and protect his own interest. The question as to whether the other three directors were acting honestly and in good faith is not material. The questions in which we are interested are: Did appellant act honestly, in good faith, and deal fairly with the bank in the transaction? Did he give the bank a square deal? Did he, individually, profit by the transaction? Did he make a full and fair disclosure of all the facts which the board of directors should have known? Neither the finding of the court nor the evidence leaves any doubt as to how these questions should be answered. The facts as found, and they are amply supported by the evidence, force the inference that appellant did not deal honestly and fairly with the bank of which he was a trusted officer and director.

Appellant says no excuse has been given for failure to take prompt action to rescind; that ratification may be

inferred from acquiescence, inaction and delay; that the fair inference to be drawn from the evidence shows a full and complete ratification by the stockholders; and that the burden of showing nonratification was on appellee. This contention cannot prevail. The court finds as a fact that the "plaintiff disaffirmed said contract and notified the defendant of said disaffirmance seasonably and that the defendant has suffered no loss or damage and no change of position due to said purchase of said real estate from him by the plaintiff, or to plaintiff's failure to repudiate said transaction at an earlier date, and that neither the stockholders nor directors of the plaintiff bank have acquiesced in or ratified said contract, sale and conveyance."

Appellant contents himself by saying this finding is not sustained by the evidence, without making any attempt to review the evidence bearing upon his contention. The bare statement that a finding is not sustained by the evidence is too general to present any question. It is to be remembered, however, that, when the property was conveyed to the bank, the majority of the board of directors was not informed as to the facts and circumstances preceding and leading up to the transfer that appellee's interests were not properly protected; that appellant's interests were antagonistic to the interest of the bank. One of the directors, Dunn, was, at the time, the manager of another corporation of which appellant was a stockholder. Another director, McClure, was the manager of another corporation in which appellant was one of the two principal stockholders. While the other director, Gunckel, apparently had no close business connections with appellant, he sold his stock in appellee bank in the spring of 1924, for 50 cents on the dollar, and thereafter had no interest in the bank. Welbourn, who was the cashier of the bank, and prepared the resolutions relating to the

transaction, retired from the bank in March, 1925, to become vice-president of a finance company of which appellant was a director. After the property was conveyed to appellee, Fisher continued to be president of the bank, and, as a director, sat in the meetings of the board with a $1,000 present from appellant in his pocket. The same directors who bought the building, or a majority of them, continued to manage the bank until January 9, 1925, when Dunn and appellant resigned. In September, 1925, a complete new board being in charge, it ordered an investigation of the facts connected with the purchase, and, on November 11, 1925, placed the facts which had been discovered in the hands of an attorney with the view of taking some action looking to a rescission. On February 1, 1926, a deed was ordered drawn for the purpose of tendering the same to appellant, with a tender of the rents and profits of the building and the making of a demand for restoration of the money. The tender and demand were made February 27, 1926, and this suit commenced a few days later.

There is nothing to show that the building had depreciated in value or that appellant was harmed by the delay. The deed from appellant to the bank was not recorded until more than a year after its execution. There is no showing that any of the stockholders other than Fisher and appellant were ever informed of the facts relating to the transaction, and there can be no ratification in the absence of knowledge. Ratification will not be presumed.

The burden of showing nonratification was not on appellee. When plaintiff showed appellant's participation, the injurious nature of the transaction, appellant's unfairness and failure to disclose the facts, the burden was on appellant, as a matter of defense, to show that the transaction was fair and that he

made a full disclosure, and, if he relied on a claim of ratification, it was his duty to plead and prove it.

Appellant makes no contention that the judgment is for an amount greater than it should be, if there is a recovery for any amount. He makes no claim that the finding of the court as to the value of the property is not sustained by the evidence. This being true, there is no necessity to review the evidence as to value.

The court did not err in overruling the demurrer to the complaint or in overruling the motion for new trial.

Governor Goodrich, while testifying as a witness for appellee, was, over the objection of appellant, allowed to state that, in his opinion, the purchase of the Fisher building for $25,000 was not for the best interest of that institution. This case was tried by the court without a jury, and, there being sufficient other competent evidence to sustain the finding of the court, the admission of this testimony, if error, would not justify a reversal of the judgment. *Geo. F. Hinrichs, Inc.*, v. *U. S. Bank & Trust Co.* (1928), 88 Ind. App. 327, 163 N. E. 842. The rule applicable to jury trials is not strictly applied in cases tried by the court without a jury. "The admission of irrelevant testimony which has little, if any, probative force does not constitute reversible error where there is nothing to indicate that the complaining party was, or could have been, harmed by its introduction, particularly where the issues were tried by the court without the intervention of a jury, as in this case, and the decision does not depend on the incompetent evidence for its support." *Shira* v. *State, ex rel.* (1918), 187 Ind. 441, 119 N. E. 833. And in *Grasselli Chemical Co.* v. *Simon* (1925), 84 Ind. App. 327, 332, 150 N. E. 617, where it was urged that the cause should be reversed because of the admission of incompetent evidence, the court said: "But, as there is other competent evidence in the record sufficient to sustain

the finding herein, we cannot, under the well-settled rule, reverse this case because of such error; it was harmless." In *Mammoth Mining Co.* v. *Salt Lake, etc., Co.* (1894), 151 U. S. 447, 14 Sup. Ct. 384, 38 L. Ed. 229, it was held that, where the evidence objected to was cumulative in its character and not of controlling importance, and, if excluded, it was clear that the result would not have been otherwise than it was, the admission of evidence, if erroneous, did not constitute reversible error. And, in the instant case, if the testimony to which the objection was made had been struck out or not admitted, it is not probable the court would have reached a conclusion different from the one it did reach. "Where there is sufficient competent evidence to sustain a finding in a case tried by the court without a jury, the admission of incompetent, irrelevant and immaterial evidence is not cause for reversal." *Seymour Imp. Co.* v. *Viking Sprinkler Co.* (1928), 87 Ind. App. 179, 196, 161 N. E. 389. If, in such a case, the record shows that the finding rests on incompetent evidence, the judgment will be reversed. *Buffalo, etc., Quarries Co.* v. *Davis* (1910), 45 Ind. App. 116, 99 N. E. 327. In the instant case there is ample, competent, uncontradicted evidence, other than that which was admitted over objection, so that the admission of such testimony is not cause for reversal.

No question has been presented as to the effect of the action of the court in sustaining appellant's motion to modify the judgment and the rendition of a judgment in accordance with such motion.

Judgment affirmed.

Nichols, J., not participating.