## Port and Others *v.* Russell and Others.

BILL OF EXCEPTIONS.—*Time of Filing.*—Where time is given extending beyond the term, in which to file a bill of exceptions, it must be filed within the time limited, or it will constitute no part of the record; and a bill of exceptions is no part of the record, unless the record shows when it was filed.

TURNPIKE.—*Injunction.*—*Directors as Contractors.*—Where a complaint was filed to enjoin the directors of a gravel road company from paying any money on a contract for the construction of the road, and the county treasurer from collecting the taxes, alleging fraud, irregularity, and unfairness, and that the contracts were given to two persons, one of whom was a director of the company, and that the other had an illegal and corrupt understanding with the directors that he was to share the profits with them;

*Held*, that a director of an incorporated company cannot become a contractor with the company, nor can he have any personal or pecuniary interest in a contract between a company of which he is a director and a third person.

PLEADING.—*Argumentative Denial.*—Where a general denial has been filed as an answer, another paragraph of answer, which contains nothing but an argumentative denial and facts which could have been proved under the general denial, should be stricken out on motion; but a judgment will not be reversed for an error in this matter, where a demurrer has been sustained to such a paragraph.

APPEAL from Fayette Common Pleas.

BUSKIRK, J.—This was a proceeding instituted by the appellees to enjoin the appellants from paying any money on a contract for the construction of a gravel road. There were seventeen plaintiffs, who allege that they were tax payers and owners of real estate, and had been assessed for the construction of said road. The defendants were the directors and officers of the College Corner and Western Gravel Road Company. A temporary injunction was granted by the judge in vacation.

The defendants moved the court, in term time, to dissolve the injunction, which was overruled, and an exception was taken. The defendants then moved the court to strike out portions of the complaint, and this was overruled, and an exception taken. The defendants then demurred to the complaint, which was overruled, and an exception taken.

The defendants then answered in three paragraphs, and a

demurrer was filed to the second and third, and was sustained, and an exception taken.

The cause being at issue on the general denial, was put to trial before a jury, and some ten interrogatories were put to the jury and by them answered; which finding of the jury the defendants, at the proper time, asked the court to set aside, which the court refused, and defendants excepted. And the court, upon the answers of the jury to the interrogatories, rendered final judgment and perpetually enjoined the payment of the money upon the said contracts. A motion to set aside the finding of the jury and the judgment of the court was then made, overruled, and excepted to.

A motion for a new trial was made, overruled, and excepted to; and an appeal was prayed and granted, and thirty days' time was given the defendants, in which to prepare and file bills of exceptions. This was on the 25th day of December, 1869. It further appears from the record, that the bill of exceptions was not filed until the 29th day of January, 1870, which was more than thirty days from the time of granting the leave.

There are twenty-one assignments of error, but none of them are available here but the nineteenth and twentieth, which are based upon the action of the court in overruling the demurrer to the complaint, and in sustaining one to the second and third paragraphs of the answer. All the other errors assigned must be reserved by a bill of exceptions. It is a well settled rule of practice in this court, that where time is given extending beyond the term, in which to file bills of exceptions, they must be filed within the time limited, or they will constitute no part of the record; and a bill of exceptions is no part of the record, unless the record shows when it was filed. See *Simonton* v. *The Huntington, etc., Co.*, 12 Ind. 380; *Peck* v. *Vankirk*, 15 Ind. 159; *Lake Erie, etc., R. R. Co.* v. *Loveland*, 14 Ind. 291; *Roloson* v. *Herr*, 14 Ind. 539; *Terre Haute Gas Co.* v. *Teel*, 20 Ind. 131; *Brouse* v. *Price*, 20 Ind. 216; *Moss* v. *Kendall*, 20 Ind. 485; *Swinney* v. *Nave*, 22 Ind. 178; *Farnsworth* v. *Coquillard's*

*Adm'r,* 22 Ind. 453; *Cox* v. *Blair,* 19 Ind. 390; *Noble* v. *Thompson,* 24 Ind. 346; *Sherman* v. *Crothers,* 25 Ind. 417; *McElfatrick* v. *Coffroth,* 29 Ind. 37; *Vanness* v. *Bradley,* 29 Ind. 388; *Fitzenrider* v. *The State,* 30 Ind. 238.

The first available error is based upon the action of the court in overruling the demurrer to the complaint. Did the facts stated in the complaint constitute a good cause of action, and entitle the plaintiffs to the relief prayed for? The complaint and exhibits cover fifty-five pages of the record, but we will try to give an abbreviated and condensed abstract of the principal facts stated, that will present the grounds upon which the action was based, and render our ruling intelligible.

The complaint alleges that in March, 1867, the commissioners of Union county, Indiana, granted a permit to organize a gravel road company under, and by virtue of, the act of 1865; that in April, 1867, the company was organized, elected officers, and adopted articles of association and by-laws, which were filed in the recorder's office of Union county; that surveys and estimates were made which required a road to be made with gravel, sixteen feet wide, fifteen inches deep in the center, and nine inches deep at the sides, and upon which surveys and estimates of the engineer the taxes were levied by the auditor of said county, and assessed and apportioned, which was in all things in conformity with the laws and the said articles of association; that the aggregate sum assessed against the plaintiffs amounted to $——; that the defendants, as individual stockholders, were opposed to the construction of said road, and had done all in their power to prevent its construction, and to that end had instituted suits to have the corporation dissolved, upon the ground that it had not been legally organized; that since their election as directors and officers, and with the open and avowed purpose of defeating the construction of the said road, and with the express design of defeating the objects and purposes for which the said company had been organized, they had fraudulently confederated, com-

bined, and conspired together to prevent the collection of the taxes assessed against them, and to compel the plaintiffs to pay their taxes assessed against their property; that in pursuance of such fraudulent and corrupt confederation, combination, and conspiracy, the said defendants, as such board of directors, have let the contracts for the construction of said roads, or the greater part thereof, to individual members of said board, and to others, who are parties to such fraud; that the said contracts do not comply with the requirements of said articles of association, nor with the surveys and estimates upon which said taxes were assessed and apportioned; but upon the contrary, the said contracts provide for the construction of a road of gravel of only eight feet in width, and of twelve inches of gravel in the center, and six inches at the sides, in depth; that such a road would be utterly worthless, and upon which no tolls could be legally charged and collected under the said statute, and would be a fraud upon the tax-payers along the line of the said road, and in flagrant violation of the articles of association; that in pursuance of said fraudulent and corrupt combination and conspiracy, the said defendants are procuring the satisfaction and discharge of the taxes assessed against them and their property, by means of work pretended to be done under said illegal and fraudulent contracts, and are demanding and proceeding to collect the taxes assessed against the plaintiffs, with the fraudulent design of appropriating the same to the payment of the unlawful, fraudulent, and worthless work being done under said illegal contracts; that at the letting of the said contracts it was announced and understood that the contractors should remove the earth from the gravel; and that after the making of the said contracts, the said directors had passed an order requiring the company to remove such earth, thus increasing the cost of construction about sixteen hundred dollars, and putting the same into the pockets of the contractors, one of whom was a director; and that the other had an illegal and corrupt bargain with the other directors, to share the profits with them; that the said directors were

borrowing large sums of money and rendering the company liable therefor; and that the taxes assessed against the plaintiffs were due and unpaid; and that the treasurer of said county would proceed to collect the same by distress and sale of their property, unless enjoined from so doing. The prayer of the complaint was, that the treasurer should be enjoined from collecting the said taxes; that the directors should be perpetually restrained and enjoined from paying any money to the said contractors for work done under and by virtue of said contracts, and for general relief.

Was the complaint good? We think it was. There are many allegations of fraud, irregularity and unfairness in the complaint, but we only propose to examine one objection that is urged to the legality and validity of the contracts for the construction of the road.

It is charged in the complaint that the contracts were given to two persons, one of whom was a director of the company; and that the other contractor had an illegal and corrupt understanding with the directors that he was to share the profits with them.

The question presented for our consideration and decision is, can a director in an incorporated company become a contractor with the company, or can he have any personal and pecuniary interest in a contract between the company of which he is a director and a third person? We think the law is well settled, both in England and in this country, that he cannot. In the case of *The Aberdeen Railway Company v. Blakie*, 1 Macq. Ap. Cas. 461, the House of Lords, reversing the judgment of the court below, held that a contract entered into by a manufacturer for the supply of iron furnishings to a railway company of which he was a director or the chairman at the date of the contract, was invalid, and not enforceable against the company.

Lord CRANWORTH, in delivering the opinion of the court, says: "A corporate body can only act by agents, and it is, of course, the duty of those agents so to act as best to promote the interest of the corporation whose affairs they are

conducting. Such an agent has duties to discharge of a fiduciary character toward his principal; and it is a rule of universal application, that no one having such duties to discharge shall be allowed to enter into engagements in which he has, or can have, any personal interest conflicting, or which possibly may conflict, with the interests of those whom he is bound to protect. So strictly is this principle adhered to that no question is allowed to be raised as to the fairness or unfairness of a contract so entered into. It obviously is, or may be, impossible to demonstrate how far, in any particular case, the terms of such a contract have been the best for the *cestui que trust* which it was possible to obtain. It may sometimes happen that the terms on which a trustee has dealt, or attempted to deal, with the estate or interests of those for whom he is a trustee, have been as good as could have been obtained from any other person; they may even, at the time, have been better. But still so inflexible is the rule, that no inquiry on that subject is permitted. The English authorities on this subject are numerous and uniform."

The three leading cases in this country are *Michoud* v. *Girod*, 4 How. U. S. 503; *Coal and Iron Company* v. *Sherman*, first published in vol. 8 Am. Law Reg. 334, and afterward reported in 30 Barb. 553; and *The Hoffman Steam Coal Company* v. *Cumberland Coal and Iron Company*, 16 Md. 456. In these cases will be found a full, able, and exhaustive discussion of the question, and a thorough examination of the English and American cases.

The Supreme Court of New York, in *Coal and Iron Company* v. *Sherman, supra*, say: "Nay, the rule, as applicable to managers of corporations, should in no particular be relaxed. Those who assume the position of directors and trustees, assume, also, the obligations which the law imposes on such a relation. The stockholders confide to their integrity, to their faithfulness, and to their watchfulness the protection of their interests. This duty they have assumed; this the law imposes upon them; and this those for whom

they act have a right to expect. The principals are not present to watch over their own interests; they cannot speak in their own behalf; they must trust to the fidelity of their agents. If they discharge these important duties and trusts faithfully, the law interposes its shield for their protection and defense; if they depart from the line of their duty, and waste or take to themselves, instead of protecting the property and interests confided to them, the law, on the application of those thus wronged or despoiled, promptly steps in to apply the corrective, and restores to the injured what has been lost by the unfaithfulness of the agent."

The learned judge, in the same opinion, says: "Neither are the duties and obligations of a director or trustee altered from the circumstance that he is one of a number of directors or trustees, and that this circumstance diminishes his responsibility, or relieves him from any incapacity to deal with the property of his *cestui que trust.* The same principles apply to him as one of a number, as if he was acting as a sole trustee. It is not doubted that it has been shown that the relation of the director to the stockholders is the same as that of the agent to his principal, the trustee to the *cestui que trust;* and out of the identity of these relations necessarily spring the same duties, the same danger, and the same policy of the law. The number of directors or trustees does not lessen the danger or insure security that the interests of the *cestui que trust* will be protected. The moment the directors permit one or more of their number to deal with the property of the stockholders, they surrender their own independence and control. If five directors permit the sixth to purchase the property entrusted to their care, the same thing must be done with the others if they desire it."

All experience demonstrates that the increase of the number of the agents in no degree diminishes the danger of unfaithfulness. *Whichcote* v. *Lawrence,* 3 Ves. 740, was a case of several trustees. In this case Lord LOUGHBOROUGH says: "There are more opportunities for that species of

management which does not betray itself much in the conduct and language of the party when several trustees are acting together. I am sorry to say there is greater negligence where there is a number of trustees."

Judge DAVIES, in the New York case above quoted from, says: "After a most careful and patient investigation of the facts in this case, and the numerous authorities cited in the protracted and very able arguments made by the learned counsel for the respective parties in this cause, I have arrived at the conclusion, entirely clear to my own mind, that this deed of sale and contract cannot be sustained. To hold otherwise, would be to overturn principles of equity which have been regarded as well settled since the days of Lord Keeper BRIDGMAN, in the 22d of Charles II., to the present time—principles enunciated and enforced by HARDWICKE, THURLOW, LOUGHBOROUGH, ELDON, CRANWORTH, STORY, and KENT, and which the highest courts in our country have declared to be founded on immutable truth and justice, and to stand upon our great moral obligation to refrain from placing ourselves in relations which excite a conflict between self-interest and integrity."

The case under consideration affords a fine illustration of the danger of permitting a conflict between self-interest and integrity. It is alleged in the complaint that when the proposals were received and contracts made, it was announced by the directors and understood by the bidders, that the contractors would be required to remove the earth from the gravel, and that after one of the directors had become a contractor, and others pecuniarily interested in the other contract, the board of directors passed an order imposing upon the company the labor and expense of removing such earth, thus increasing the costs of construction to the stockholders some sixteen hundred dollars, which went into the pockets of the contractors. The court committed no error in overruling the demurrer to the complaint.

The defendants answered in three paragraphs: first, the general denial. The second paragraph contains a long and

minute history of the organization of the company, the articles of association, election of officers, the surveys and estimates, the making of the contracts for the building of the road, the assessments on the property of the stockholders; and a specific denial of each and all the allegations in the complaint, and especially the allegations of fraud and corruption. The historical portion of this paragraph does not differ essentially from that given in the complaint, and the residue does not amount to more than a specific and argumentative denial of the allegations of the complaint.

From a careful examination of this paragraph we have been unable to find any allegation of a fact that could not have been proved under the denial. It should have been stricken out on motion, but the judgment should not be reversed because a demurrer was sustained to it, as it resulted in no injury to the appellants.

The third paragraph alleges, that on the 27th day of July, 1869, the board of directors of the said company passed an order that the said road should be built of gravel, eight feet wide, twelve inches thick in the center, and six inches at the sides, and that the company should strip the earth from the gravel; that notice was given that lettings would be had thereon; that due notice was given of such lettings, and bids were received and contracts awarded according to the said order of the said board of directors; and that the road was being constructed under and in pursuance of the said order adopted on the said 27th day of July, 1869.

The contracts were made on the 12th day of August, 1869. The complaint alleges that the order changing the width and depth of the road, and requiring the company to remove the earth from the gravel, was made and adopted after the letting and awarding of contracts; and that the bids were made and contracts awarded with the understanding that the road was to be sixteen feet wide, and the gravel was to be eighteen inches in the center, and gradually slope to nine inches at the sides.

It will certainly require no argument or reference to

authorities to demonstrate that the matters and things alleged in the third paragraph of the answer only amounted to an argumentative denial of the allegations of the complaint. All the facts stated in this paragraph could have been proved under the general denial, and the evidence not being in the record, we will presume that the testimony was offered and received under the issue formed by the allegations of the complaint and general denial thereto.

The court committed no error in sustaining the demurrer to the third paragraph of the answer.

The judgment is affirmed, with costs.

*B. F. Claypool*, for appellants.

*J. C. McIntosh*, for appellees.