EARLE v. COMMISSIONER OF INTERNAL REVENUE, and two other cases.

Nos. 2402–2404.

Circuit Court of Appeals, First Circuit.

March 5, 1930.

Philip Nichols, of Boston, Mass. (Arthur P. Teele and Joseph A. Boyer, both of Boston, Mass., on the brief), for petitioners.

Morton P. Fisher, Sp. Asst. to Atty. Gen. (G. A. Youngquist, Asst. Atty. Gen., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and John MacC. Hudson and Sewall Key, Sp. Attys., Bureau of Internal Revenue, all of Washington, D. C., on the brief), for Commissioner.

· Before BINGHAM and WILSON, Circuit Judges, and MORRIS, District Judge.

MORRIS, District Judge.

These are three appeals from a decision of the Board of Tax Appeals denying the petitioners a redetermination of an alleged deficiency in their income taxes for the year 1923.

The amounts involved are respectively $717.23 in the case of Arthur H. Earle; $736.41 in the case of Foster B. Earle; and $4,045.47 in the case of Arthur H. Earle, executor.

The three cases depend upon the same state of facts, and were heard together. The individual petitioners and the decedent were members of a partnership formed January 1, 1923, and dissolved by death of Eugene V. Earle, one of the partners, on July 1, 1923.

Prior to January 1, 1923, Eugene V. Earle was a real estate operator engaged in the business of purchasing land, erecting business blocks thereon, and selling the completed buildings. On January 1, 1923, he took into partnership his two sons, Foster B. Earle and Arthur H. Earle. Each of the sons was to have a one-quarter interest in the profits and Eugene V. Earle one-half interest.

The father, Eugene V. Earle, contributed capital in the business to the amount of $151,219.74, representing his investment at that time in his individual business. He had under construction a building on Clarendon street in Boston, the construction of which was taken over by the partnership and completed shortly before June 14, 1923. The building was sold on the last-mentioned date at a profit to the partnership of $70,793.37.

Prior to June 30, 1923, the partnership acquired a tract of land on Columbus avenue, Boston, at a cost of between $110,000 and $120,000. The partnership intended to erect on this lot an eight-story building. At the time of the death of Eugene V. Earle the lot had been excavated and the contract let for putting in the foundation. There was a mortgage of $30,000 on the land. In addition to the Columbus avenue property, the partnership owned mortgages of about $15,000, and also had cash which it was using in the Columbus avenue project.

The surviving partners could not sell the lot in the condition in which it stood at the date of their father's death. They finally determined to proceed with the project, limiting the building to three stories. It was completed July, 1924. The building as erected never earned expenses. In 1928 an additional mortgage was placed upon the property and five stories added. All of the partnership funds were invested in this enterprise.

In 1923, prior to the death of Eugene V. Earle, the partners had caused a corporation to be formed under the name of Eugene V. Earle & Sons, Inc. Its stock had not been issued on July 1, 1923. On September 14, 1923, the stock was issued and divided between the estate of the decedent, Foster B. Earle and Arthur H. Earle, in the amounts of $5,000, $2,500, and $2,500 respectively. All of the partnership assets were transferred to the corporation, which assumed all of the liabilities of the partnership. There has been no sale of the stock, and the corporation continues to own the Columbus avenue property.

The sole question presented is whether or not the petitioners must include in their individual income tax return their respective distributive shares of the partnership income under the provisions of section 218 (a) of the Revenue Act of 1921 (42 Stat. 245), which provides as follows:

"That individuals carrying on business in partnership shall be liable for income tax only in their individual capacity. There shall be included in computing the net income of each partner his distributive share, whether distributed or not, of the net income of the partnership for the taxable year, or, if his net income for such taxable year is computed upon the basis of a period different from that upon the basis of which the net income of the partnership is computed,

then his distributive share of the net income of the partnership for any accounting period of the partnership ending within the fiscal or calendar year upon the basis of which the partner's net income is computed. * * *

"(c) The net income of the partnership shall be computed in the same manner and on the same basis as provided in section 212. * * * "

Section 212 (42 Stat. 237) provides for the computation of the net income of individuals by including therein gross income as defined in section 213 and deducting therefrom the items allowed by section 214.

Section 213 (a) provides that gross income shall include among other things profits and incomes derived from sales or dealings in property whether real or personal, growing out of the ownership or use of, or interest in, such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. The amount of such items shall be included in the gross income for the taxable year in which received by the taxpayer, except when a different method of accounting is authorized under other provisions of the law not important to be considered in this case.

In computing net income, the deductions allowed under section 214 (a) are the ordinary and necessary expenses paid during the taxable year in carrying on any trade or business; interest paid or accrued within the taxable year on indebtedness except on indebtedness incurred or continued to purchase or carry on obligations or securities; taxes paid or accrued within the taxable year; losses sustained during the taxable year if incurred in trade or business; debts ascertained to be worthless, etc.

■■■ The claim of the petitioner is that the partnership ceased to exist upon the death of Eugene V. Earle on July 1, 1923, and that, in accordance with chapter 486, Massachusetts Acts of 1922, the surviving partners had no right to possess the partnership property for any but partnership purposes; that they had the right to wind up the partnership affairs, and, on settling the accounts between partners after dissolution, the following statutory rules must be observed.

"Massachusetts Acts of 1922, c. 486, sec. 40.

"In settling accounts between the partners after dissolution, the following rules shall be observed, subject to any agreement to the contrary:

"(a) The assets of the partnership are—

"I. The partnership property.

"II. The contributions of the partners necessary for the payment of all the liabilities specified in clause (b) of this section..

"(b) The liabilities of the partnership shall rank in order of payment, as follows:

"I. Those owing to creditors other than partners.

"II. Those owing to partners other than for capital and profits.

"III. Those owing to partners in respect of capital.

"IV. Those owing to partners in respect of profits."

It is urged by petitioners that, the partnership having been dissolved during the taxable period, the surviving partners and the estate of the deceased partner had no individual rights in the partnership assets until the partnership was wound up and the assets distributed in accordance with the Uniform Partnership Law which has been adopted by the Massachusetts Legislature. Citing Blodgett v. Silberman, 277 U. S. 1, 12, 48 S. Ct. 410, 72 L. Ed. 749.

It is further urged that under the provisions of section 218 of the Revenue Act, supra, the petitioners could not be taxed for the reason that the proper tax must be measured by the "distributive share" of each partner, and that no share of the profits was "distributive" until the balance of the assets over return of capital was ascertained.

Section 218 (a) provides that there shall be included in computing the net income of each partner his distributive share, whether distributed or not, of the net income of the partnership for the taxable year.

There is no suggestion in this language that the word "distributive" was used in a narrow, technical sense. The context appears to preclude such a narrow construction. If the word "distributive" were to be limited to the share each partner receives from actual distribution of profits, either from a going concern or upon dissolution of the partnership, the words of the statute "whether distributed or not" become meaningless. Each partner has a potential right to his share of undivided profits. Plainly, the word "distributive" is used in the sense of "proportionate." It is the partner's proportionate share of the net income of

the partnership gained during the taxing period that is taxable whether distributed or not. Losses suffered during the same period are allowed as deductions from partnership gross income in arriving at net profits. Holmes, Fed. Taxes 1923. Ed. 207.

It appears from the record that the partnership was wound up on the 14th day of September, 1923, when the interests of the several partners were conveyed to a corporation and stock received in exchange therefor. The partnership ceased to exist after September 14, 1923. It had no assets and no liabilities. Each partner took his share of partnership property including net income in corporate stock.

The petitioners contend that the partners had no distributive share of partnership profits because there was a decrease in the value of the capital assets, and that the capital loss was sufficient in the exchange of the assets for the capital stock of the corporation to wipe out the profits previously made.

As we understand the facts, the partnership had made a net profit of $70,703.37 prior to July 1, 1923. Its assets were being used in another enterprise which was not completed until July, 1924. Whether this second enterprise would result in a gain or loss could not be ascertained within the taxing period.

Any contention that net income for the taxable year 1923 would be wiped out by losses expected in future years is untenable. Income taxes are levied upon the net income for an annual accounting period. Gains in one period may not be offset by losses in another; therefore there was no deductible loss in 1923 unless it was sustained when partnership assets were exchanged for corporate stock.

Whatever may have been the par value of the stock received by the partners, it represented their entire interests in the partnership assets, including any net income. There was no sale of the stock during the taxing period. The fact that only $10,000 par value of stock was issued is not controlling. They may as well have issued shares of stock of no par value. Under section 202, Revenue Act of 1921 (42 Stat. 229), no loss is deductible in such a transaction. This court so held in the case of Tsivoglou v. United States, 31 F.(2d) 706, 708.

In each case: The order of the Board of Tax Appeals is affirmed.