## BROWN v. COMMISSIONER OF INTERNAL REVENUE. *

### No. 6812.

Circuit Court of Appeals, Ninth Circuit.

Feb. 6, 1933.

* Rehearing denied March 21, 1933.

Arthur B. Dunne, of San Francisco, Cal. (Peter F. Dunne, J. E. Cook, and Dunne, Dunne & Cook, all of San Francisco, Cal., of counsel), for petitioner.

G. A. Youngquist, Asst. Atty. Gen., Sewall Key and Wm. Cutler Thompson, Sp. Assts. to the Atty. Gen. and C. M. Charest, Gen. Counsel, and Charles E. Lowery, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for respondent.

Before WILBUR and SAWTELLE, Circuit Judges, and CAVANAH, District Judge.

CAVANAH, District Judge.

These are three appeals from a decision of the Board of Tax Appeals denying the petitioner a redetermination of alleged deficiencies in his income taxes for the years 1923, 1925, and 1926, in the respective sums of $17,923.03, $1,520.19, and $944.30. The cases were consolidated for hearing and decision before the Board, and are so presented here on a single transcript of record.

The tax involved is the individual, normal income tax and surtax of the petitioner, Arthur M. Brown, for the years thus stated. In 1923 the petitioner was conducting, alone, the business of a general insurance agent, and, during the taxable years 1925 and 1926, it was carried on by a partnership composed of him and his son, Arthur M. Brown, Jr., under the name of Edward Brown & Sons.

On June 1, 1902, Edward Brown, Herbert H. Brown, and the petitioner executed a written agreement, by the terms of which they declared their respective interests in the business, and then provided: "Before any division of profits is made the said partners mutually agree to pay monthly to Jessie H. Jones, Edith H. Halton, and Ethel Brown (the three daughters of Edward Brown and Sisters of Arthur M. Brown and Herbert H. Brown) the sum of Two Hundred and Fifty Dollars (250) and, Further, that whenever the net income from the business of the said firm shall exceed the sum of Eighteen Thousand Dollars·per annum they will pay a one-sixth proportion of such excess to the said Jessie H. Jones, Edith H. Halton, and Ethel Brown."

On May 28, 1907, Edith H. Halton and Ethel Crandell, the two surviving sisters, executed a written agreement in which they agreed to accept from the firm $250 per month, beginning June 1, 1907, and·ending only by mutual agreement, "in full satisfaction of all amounts which may be due, or may become due, to us, or either of us, or to the survivor of us," under the agreement of May 27, 1905, which provided: "That any further amounts to which we, or either of us, or the survivor of us, might be entitled from said firm under said agreement shall be retained in the net profits of said firm as the property and to the credit of said Arthur M. Brown and Herbert H. Brown, members of said firm, to be divided between them as they may agree."

In 1923 the petitioner made a payment of $3,000 to his sister, Edith H. Halton, in accordance with the agreement, and claimed the same as a deduction from business income in his tax return for that year. The deduction was disallowed by the Commissioner on the ground that the payment constituted a capital expenditure.

The surviving daughters of Edward Brown, of whom Edith H. Halton is one, having in the agreement of May 28, 1907, agreed to accept $250 per month in satisfaction of all amounts which may become due to them from the firm under the agreement of May 27, 1905, the terms of which are not in the record, and for that reason we are unable to determine what interest, if any, Edith H. Halton had in the business of Edward Brown & Sons, as a partner, or rendered at any time any service to petitioner or the firm which would authorize the allowance of the item as a deductible business expenditure within the contemplation of the taxing statute.

The second issue is whether the Board of Tax Appeals adopted the proper method of treating the overriding commissions received by the firm of Edward Brown & Sons during the taxable years in dispute where it held that petitioner, accounting on the accrual basis, was obliged to report the full amount of the overriding commissions received in the three years in controversy, without deducting, either as a reserve or.otherwise, on account of a contingent liability to refund certain portions of such commissions in later years on account of reinsurance or cancellation.

This method adopted by the Board is challenged by petitioner, who asserts that he should be permitted to pay his tax on the basis of earned income computed under the actuarial computation. In other words, that there should be returned as income upon the basis of a pro rata apportionment of such commissions to the policy years.

The firm of Edward Brown & Sons acted as general agents for six fire insurance companies during the taxable years in controversy, and the duties required of it were the appointment and removal of local agents; issue, countersign, and cancel policies; adjust losses under policies, receive and receipt for premiums; compute and return premiums on canceled policies; secure return of premium on canceled reinsurance; receive and acknowledge service of proof of loss; accept service of process; survey all risks offered and accept or reject the same; transfer insurance by indorsement; attend to the payment of all taxes and license fees; and, generally attend to all of the affairs of its principals in the territory in which it operated. All of the policies written by the firm since 1917 are for periods of one, three, or five years, and are subject to cancellation by either the insurance company or the assured. If a policy is canceled by the insurance company, it is obligated to refund a ratable proportion of the premium for the unexpired term of the policy. In the event the assured cancels, the company is entitled to retain the customary short period rate for the time the policy has been in force. Premiums on policies are payable in advance, subject to the usual grace period of sixty days. Remittances are made by the firm to the insurance companies on monthly balances, charging itself a proportional part of any overriding commissions previously received in respect of any business which was canceled or reinsured in another company, and crediting itself with the overriding commissions due on business written during the month. The books of the

68

firm have been kept on an accrual basis; refunds of overriding commissions on account of cancellations of policies or reinsurance, and of new business, have been accounted as expense and income of the year they occurred. For the first time, at the close of 1923, there appeared on the firm's books a liability account denominated "Return Commissions." Petitioner, in computing business income for the year 1923, claims a deduction of $52,971.96, for the year 1925, $3,292.98, and for the year 1926, $1,947.77, the amounts credited to the contingent liability account at the close of those years.

It is obvious that the theory of petitioner is that we must anticipate such contingent liability to refund in subsequent years such an amount as the past experience of the business indicates on account of cancellation of policies and reinsurance, in the proportion of the gross commissions earned within the year as the total premiums canceled during the preceding five-year period bears to the gross premiums written in the same period. To do so, we are required to compute the income of the three years in dispute upon a basis that will reflect the contingencies of the future.

Revenue taxation requires that one who receives a sum of money subject to his disposition should account for the same as income in the year he receives it and not at some indefinite future time of his own selection. Should the practice urged by petitioner be followed, the collection of the revenues of the national government would be uncertain, for the government would be taking the chance that the money is still available for taxation during subsequent years, and that the taxpayer is still solvent. Such reserves, as urged by petitioner, to cover contingent liabilities, are not allowable as deductions, unless sanctioned by statute, and we do not find any such statute. Spring Canyon Coal Co. v. Commissioner (C. C. A.) 43 F.(2d) 78, 76 A. L. R. 1063; Lucas v. American Code Co., 280 U. S. 445, 50 S. Ct. 202, 74 L. Ed. 538; Thomas Cronin Co. v. Lewellyn (D. C.) 9 F.(2d) 974; Consolidated Tea Co. v. Bowers (D. C.) 19 F.(2d) 382; Highland Milk Condensing Co. v. Phillips (C. C. A.) 34 F.(2d) 777; Earle v. Commissioner of Internal Revenue (C. C. A.) 38 F.(2d) 965. This has been the repeated holding of the Board of Tax Appeals. William J. Ostheimer, 1 B. T. A. 18; Uvalde Co., 1 B. T. A. 932; Jackson Casket & Manufacturing Co., 7 B. T. A. 1190; Landesman-Hirschheimer Co., 15 B. T. A. 64, and Lane Construction Corp., 17 B. T. A. 826, which was affirmed in (C. C. A.) 49 F.(2d) 1080.

The conclusion we have reached sustains the orders of the Board of Tax Appeals in the three cases.

Orders affirmed.

WILBUR, Circuit Judge (concurring).

In addition to what is said by Judge CAVANAH, I wish to add the following statement: As I understand the record, the petitioner claimed, and was granted, the right to take from the income of the year 1923 all payments actually made in that year by reason of return of premium on policies written in previous years, and, in addition to the allowance upon premiums actually returned during the year 1923, the petitioner set up a reserve of 22.38 per cent. of all premiums collected during the year to take care of such return of commission as it was estimated would be required in future years according to the experience of the agency, or, to state the matter differently, the agent returns as income only 77.62 per cent. of the overriding commissions received by him as gross income and deducts therefrom the actual returns of premium made during the year. The total fire overriding commission for 1923 was $236,693.31, and 22.38 per cent. thereof was $52,971.96. If this is true, it is clear that the petitioner is not entitled to both deductions during the year 1923. If the percentage of 22.38 is reasonable, it will make no difference in the long run to the petitioner whether the return commissions due to canceled policies are deducted from the revenue of the current year or from a contingent fund set up, as petitioner claims the right to do.