## LEWIS v. UNITED STATES.

## SAUNDERS v. SAME.

## WESTCOTT v. SAME.
### Nos. 10469–10471.

District Court, D. Colorado.
Dec. 30, 1936.

A. W. McHendrie, of Pueblo, Colo., and Horace N. Hawkins, of Denver, Colo., for plaintiffs.

Thomas J. Morrissey, U. S. Atty., and Ivor O. Wingren, Asst. U. S. Atty., both of Denver, Colo., for the United States.

SYMES, District Judge.

These three cases were tried together by agreement upon a stipulation of facts and a jury waived. The respective plaintiffs sue for refunds of income taxes claimed to have been ⌣ ⌐neously or illegally assessed and collected.

Lewis claims an excess payment of $6,749.95 for the year 1930, and $3,738.64 for the year 1931, plus an additional claim based on the fact that for 1931 he was entitled to an exemption of $3,335.13 as a married man, but had claimed only $1,500.

Saunders claims an excess payment of $3,688.54 for the year 1929. Ethel L. Westcott claims $8,893.15 for the year 1930, and $4,059 for 1931.

The alleged excess income taxes so paid by the plaintiffs were based upon moneys that each of the plaintiffs received as officers of the Railway Savings & Building Association, then engaged in business in Pueblo, Colo., to which they believed themselves entitled at the time of the receipt thereof.

The association, located in Pueblo, had enjoyed a large business for many years. On July 25, 1932, in a proceeding in the state court brought by the Attorney General of Colorado, a receiver was appointed, who took charge of its affairs and shortly thereafter, August 24, 1932,. brought separate suits against the plaintiffs herein, Lewis, Saunders, and Westcott, to recover large sums received by said parties as compensation for services, on the ground that they were without authority to take and receive the same. Shortly after the institution of the suits, the receiver on his petition and order of court compromised and settled said suits by accepting from each one separately the conveyance of certain property, the value of which in the case of Saunders was $218,754.74, Lewis $372,415, and Westcott $224,373.73. Neither of the plaintiffs filed an answer or other pleading in the said suits, and their liability, if any, has never been determined or established by a judgment of any court. The order in the receivership proceeding merely authorized the receiver to accept said property conveyed in full settlement and dismiss the actions.

The gist of plaintiffs' claim is the allegation in each complaint—referring to the suits instituted by the receiver in the state court—that they procured competent counsel to represent them, which counsel advised them that they were not entitled to take the said compensation, salary, etc., from the said association, and that in counsels' opinion the action brought by the receiver—if prosecuted to final conclusion —would result in judgment in his favor, and that upon said advice they compro-

mised and settled the said action by repaying to the receiver the sums aforesaid.

The contention of the plaintiffs is that they were without authority to take or receive the money from the association, by reason whereof it remained from the time they received it until they returned it, impressed with a trust in favor of the association and never really belonged to them, and hence could not be taxable income.

The United States contends that the money did constitute taxable income because the plaintiffs received it in good faith and retained unrestricted control of it until sued by the receiver, and that the plaintiffs are barred because they compromised and settled the receiver's suits instead of litigating them to a conclusion by court judgment.

It cannot be disputed that the amounts in question received by the plaintiffs was income within the definition of the statute, section 22(a) of the Revenue Act of 1928, 26 U.S.C.A. § 22(a) and note, when received and when their respective income tax returns were filed.

Furthermore there has been no determination by any court of competent jurisdiction or other lawful authority, that as a matter of law these sums were illegally paid. to the plaintiffs by the association. What really happened was that upon suit being brought, the plaintiffs upon the advice of competent' counsel turned over to the receiver properties of the value mentioned. as a voluntary compromise and settlement.

The government relies upon Ford v. Commissioner (C.C.A.) 51 F.(2d) 206, 207, which holds:

"If taxes regularly assessed could be invalidated, an indefinite number of years later, by a consent judgment purporting to vacate the title of the taxpayer to the fund he had reported as income, the necessary system of tax collection would be much impaired. The true normal criterion to be applied in this class of case is the actual receipt and retention during the year in question of what was then considered to be income, not whether the taxpayer exposed himself to possible personal liability.

"If it were to be conceded that a taxpayer who, before making his return, or perhaps even later, discovers that what he thought was income was improperly paid to him, and who must and does return it, should be relieved from the tax, the con-

cession does not reach a case where the flaw in his title is only a claim of defect, until at a later time it is established, one way or the other, by a court judgment. In that respect, the case is within the rule applied by the Supreme Court in Burnet v. Sanford & Brooks Co., 282 U.S. [359] 365, 51 S.Ct. 150, 75 L.Ed. 383, and by this court in Board v. Commissioner [C.C.A.] 51 F.(2d) 73, decided June 11, 1931."

That income taxes as a practical matter have to be determined perhaps arbitrarily from year to year, and that their assessment cannot, and need not be postponed for a period of years to ascertain whether a given transaction actually will be a gain or loss is made clear in Burnet v. Sanford & Brooks Co., 282 U.S. 359, at page 365, 51 S.Ct. 150, 152, 75 L.Ed. 383, and, as pointed out in North American Oil Consol. v. Burnet, 286 U.S. 417, at page 424, 52 S.Ct. 613, 615, 76 L.Ed. 1197:

"If a taxpayer receives earnings under a claim of right and without restriction as to its disposition," as plaintiffs did in the case at bar, "he has received income which he is required to return, even though it may still be claimed that he is not entitled to retain the money, and even though he may still be adjudged liable to restore its equivalent."

Plaintiffs make the point that these salaries, commissions, etc., never belonged to the plaintiffs, but were trust funds in their hands as officers of the association. The authorities cited indicate this might be true as between the plaintiffs and the association. That controversy, however, has never been decided by any court or other lawful authority having jurisdiction and is not presented for determination in this litigation. The fact remains that when the plaintiffs received the sums in question they believed themselves legally entitled thereto and later paid them back, not because it had been authoritatively decided that they were not entitled thereto, but to settle litigation. The government cannot be bound by the taxpayers' own decision or opinion that they took this money without right or authority so to do. The association was divested of the legal title, irrespective of the equities arising from the transaction. In effect, the plaintiffs ask that the government be bound by an agreement entered into between the plaintiffs' and the receiver of the building and loan association, to which it was a stranger. Rau v. U. S. (C.C.A.) 260 F. 131, cited by plaintiffs, was a criminal prosecution, and the quotation set forth in plaintiffs' brief does not decide anything, merely holding that if the moneys in question were to be passed on to the insurance company by the defendant receiving them as agent, they need not be returned as income of the agent.

Furthermore, the assessment and collection of taxes is necessarily governed by a set of arbitrary statutes and regulations not always based upon principles of law or equity. As Justice Brandeis says in Lucas v. American Code Co., 280 U.S. 445, at page 449, 50 S.Ct. 202, 203, 74 L.Ed. 538, 67 A.L.R. 1010:

"The general requirement that losses be deducted in the year in which they are sustained calls for a practical, not a legal, test."

I have read the ten cases cited in the plaintiffs' brief in support of the statement that the fact that the plaintiffs did not defend the suits and no court judgment establishing their liability was ever entered, does not preclude the plaintiffs from the relief asked for. In all of them, as well as in Ford v. Nauts (D.C.) 25 F.(2d) 1015 —plaintiffs' chief reliance—either a court of competent jurisdiction or the Board of Tax Appeals had actually decided the question after a hearing and it was upon such a decision that the refunds were allowed. In the Ford Case (D.C.) 25 F.(2d) 1015, supra, the taxpayer received a distribution of securities under a will and before administration of the estate and the payment of the debts, and returned the dividends thereon as part of his income, and paid a federal income tax thereon. Later the state probate court required the plaintiff taxpayer to return the securities to the estate and to account for the dividends so received, holding that the plaintiff acquired no title thereto. The federal court giving full faith and credit to that decision held that the dividends did not lawfully become a part of the income of the plaintiff, and that he was entitled to recover the portion of the federal income tax paid thereon—manifestly, an entirely different factual situation from the one at bar.

Likewise in the cases before the Board of Tax Appeals, there was a hearing and determination by the Board. For instance, in the appeal of O. B. Barker et al., 3 B.T.A. 1180, the leading case, followed by the others, it was held that Barker, a stock-

holder, was entitled to set off against an amount received in liquidation of a corporation the portion thereof which he had subsequently been required to refund by way of payment of taxes of the corporation. The amount Barker refunded, however, had been duly determined by a tribunal having jurisdiction thereof and not by agreement of the parties or advice of counsel.

Logically, the plaintiffs' argument is grounded on the premise that the moneys which the plaintiffs received from and later returned to the association did not belong to them. That they must fail in this suit is clear, because the premise is not supported by the determination of any court, Board of Tax Appeals, or any authority· having jurisdiction to determine that question. In effect, we are asked to hold the government conclusively bound by the voluntary act of the parties in returning this money as a result of a compromise entered into with the receiver on the advice of counsel, in doing which they avoided the legal question, whether they were or were not entitled to the money, although the plaintiffs collected the said sums as officers of the association, and believing themselves legally entitled thereto, returned them in the respective years as income.

It is well to remember that a compromise (12 C.J. p. 314) is an agreement between two or more persons who, to avoid a lawsuit, amicably settle their differences by agreement. It implies mutual concessions and the waiver of the respective rights of the parties, but is not an admission of their invalidity.

We are not cited to any authority, nor can we find any that authorizes the taxpayer to change his tax liability in this manner long after his return is in. Such a rule would be an innovation having far-reaching effects.

We are not deciding, of course, whether the amounts thus paid back by the plaintiffs to the association in 1932 would or would not be proper deductions for that year, as is intimated in North American Oil Consol. v. Burnet, 286 U.S. 417, 52 S.Ct. 613, 76 L.Ed. 1197, supra.

It follows that the judgment should be entered dismissing the Saunders case, No. 10470, and the Westcott case, No. 10471, with costs. In the Lewis case, No. 10469, the government concedes that in his income tax return for the year 1931, he was entitled to an exemption credit of $3,335.13, instead of $1,500, as erroneously claimed. Judgment in this case, therefore, should be for the plaintiff in the sum of $68.82.