**GRIFFIN v. SMITH, Collector of Internal Revenue.**

**SAME v. UNITED STATES.**

Nos. 6587, 6588.

Circuit Court of Appeals, Seventh Circuit.

Dec. 20, 1938.

Rehearing Denied Feb. 16, 1939.

James W. Morris, Asst. Atty. Gen., Sewall Key and Courtnay C. Hamilton, Sp. Assts. to Atty. Gen., and Val Nolan, U. S. Atty., and B. Howard Caughran, Asst. to U. S. Atty., both of Indianapolis, Ind., for appellants.

S. Leo Ruslander, of Pittsburgh, Pa., Dailey, O'Neal, Dailey & Efroymson, of Indianapolis, Ind., and James E. Watson, of Washington, D. C., for appellee.

Before EVANS and SPARKS, Circuit Judges, and LINDLEY, District Judge.

LINDLEY, District Judge.

Defendant appeals from a judgment awarding plaintiff refund of taxes paid for the years 1930, 1931 and 1932.

In his return for 1930, plaintiff included a bonus paid to him by the corporation of which he was an officer and director, of $44,975, in addition to his salary; in 1931, one of $70,812.50, and, in 1932, another, of $69,975, the total of the three amounting to $185,762.50. Upon these items the taxpayer paid a tax without protest or reservation.

The by-laws of the corporation provided that the directors might fix the rate of compensation of all officers, agents and employees. At the end of each of the three years, the board adopted a resolution authorizing the payment of bonuses to the taxpayer and certain other officers, and in each year the stockholders, at a regular meeting, adopted a resolution approving all acts of the directors for the preceding year. The bonuses were not disclosed as such on the books of the company but were included in the salaries paid and shown on the books.

In 1933 certain stockholders, claiming to have become advised then, for the first time, of the payments made, presented the contention that the allowances were unauthorized and greatly in excess of reasonable compensation for services for the respective executives to whom they were paid, demanded that they be restored to the corporation and threatened to sue therefor. After continued negotiation, the parties entered into an agreement whereby the taxpayer repaid $128,002.50. Thereafter he filed application for refund of the taxes assessed upon the amounts which he refunded. The commissioner rejected the claim and the suit followed.

The court heard evidence as to the propriety of the action of the directors in voting and paying the bonuses. It concluded from the facts stated that the payment of bonuses pursuant to the directors' resolution was "void, of no effect, invalid, and in violation of the directors' duties to the corporation and its stockholders under the statutes and common law of the state of Indiana," and entered judgment accordingly. It made no finding of fact as to fraud on the part of the directors but did find that as a consequence of the demands of the stockholders, an agreement to make refund as stated resulted, and that, as a consequence of the settlement, plaintiff was required to make the refund.

Under Section 21 of the Revenue Act of 1928, 26 U.S.C.A. § 21, net income is defined as including all income computed under Section 22, 26 U.S.C.A. § 22, less the deductions allowed by Section 23, 26 U.S.C.A. § 23. Under Section 22, income includes compensation for personal service of whatever kind and in whatever form paid and all gains, profits and income derived from any source whatever. The sole question here is whether the bonus money received was income within the words of the statute and the answer to this question in turn lies in the answer to the controversy presented by the parties as to the legal significance of the facts mentioned. Plaintiff relies upon the conclusion of the court that the whole transaction was void and of no legal effect, and that, as a result, the money in equity was that of the corporation, title thereto never passing to the taxpayer but remaining at all times in the corporation and its stockholders. Defendant's position is that the action was not void in the strict sense of the word but merely voidable; that the court should have found that the bonus money constituted taxable income in the years mentioned, and that plaintiff, having received the money under claim of right, was bound to include it as income.

The expression "void contract," is often used to denote that the parties to the transaction have gone through the form of making a contract, but that none has been made in law by reason of lack of some essential element of a contract. Ewell v. Daggs, 108 U.S. 143, 2 S.Ct. 408, 27 L.Ed. 682. Such a contract creates no legal rights of any kind and either party thereto may ignore it at his pleasure, in as far as it is executory; and, being void, an absolute nullity, it is incapable of ratification. Page on Contracts, Section 54; Blinn v. Schwarz, 177 N.Y. 252, 69 N.E. 542, 101 Am.St.Rep. 806. A voidable contract on the other hand, is one wherein one party has the privilege of electing it to be either valid or void, at his pleasure. Barlow v. Robinson, 174 Ill. 317, 51 N.E. 1045; Johnson v. Insurance Co., 93 Wis. 223, 67 N.W. 416. The party in whom the law lodges such option is thus clothed with a right in the nature of an equitable election. A void contract, one made in the face of absolute inhibition by statute, is ineffective for all purposes, and the court may find itself unable to grant relief to either party, whereas a voidable contract may be rescinded at the option of the party who has the right to complain. The

use of the terms "void" and "voidable" as indicative of the transaction is unsatisfactory and often misleading. As a consequence, the two words are frequently misused, being employed indiscriminately. The word "void" is the victim of the more frequent misapplication; frequently we have a declaration that a contract is void when the facts show that it is merely voidable, that is, that one party may avoid it or validate it at his option. Ewell v. Daggs, 108 U.S. 143, 2 S.Ct. 408, 27 L.Ed. 682. Moreover, even where the two terms are not confused, neither is strictly accurate as to the ultimate effect of the transaction. 12 Am.Jur. 507.

■ Where contracts of directors in violation of their duties to the stockholders involve unreasonableness of an exercise of power, it is quite universally the rule that they are voidable. Thus, Thompson asserts, in his Work on Corporations, 3rd Edition, Vol. 2, Section 1330, that contracts between corporations and their controlling directors which are unfair and secure to such officers an unjust advantage, are voidable at the option of the corporation, its creditors or stockholders. In Burnes v. Burnes, 8 Cir., 137 F. 781, at page 790, the court announced this rule and cited many cases in support thereof. Though such acts are in some cases said to be void, the word is used in the sense that the correct principle is that the transaction is beyond the authority of the statute and is voidable at the election of the corporation or of the stockholders. Such contracts may be ratified by the stockholders and this ratification may result from long acquiescence with knowledge of the transaction on the part of the stockholders. These principles are apparently in accord with those abiding in Indiana. Schemmel v. Hill, 91 Ind.App. 373, 169 N.E. 678; Port v. Russell, 36 Ind. 60, 10 Am.Rep. 5.

■ Here the by-laws gave to the directors power, to fix the rate of compensation of all officers, agents and employees. It seems apparent from the evidence that the compensation fixed by the board was excessive. This conclusion is fortified by the fact that when complaint was made, after considerable negotiation, a compromise was entered into, whereby the greater portion of the money was refunded. While a compromise in itself is no evidence of illegality, yet the fact that money was returned is some indication of the unreasonableness of the amounts originally allowed. The board, under the Indiana law, being the managers of the corporation, as such, under the by-laws of the corporation had the right to fix the compensation of the officers. This, they did. Their act in so doing was within their corporate power, but the manner in which they exercised that power and the amounts which they allowed were such that their acts were in violation of their duties as fiduciaries. In this situation, the taxpayer received his excessive compensation, apparently under claim of right and accounted for it as income. Later when the stockholders threatened suit to rescind the transaction, they were not dealing with a wholly void transaction but one within the power of the directors improperly exercised. Thus, the act was voidable at the option of the stockholders; they had the election to accept it or to reject it—to have it set aside. That it was not wholly void is apparent from the fact that of the sum paid only the greater portion thereof was repaid. The balance was retained by the taxpayer. The true conclusion is that the contract was voidable at the option of the stockholders as to all sums in excess of a reasonable allowance, and the court was in error in concluding that it was wholly void and that the title to the money was never in plaintiff. Rather the money was delivered by the authorized officers of the corporation, in an amount in excess of that which they might deliver, with proper regard to their obligation to their beneficiaries. The language of Ford v. Commissioner, 6 Cir., 51 F.2d 206, certiorari denied, 284 U.S. 666, 52 S.Ct. 41, 76 L. Ed. 564, is pertinent. There the court said [page 207]: "If it were to be conceded that a taxpayer who, before making his return, or perhaps even later, discovers that what he thought was income was improperly paid to him, and who must and does return it, should be relieved from the tax, the concession does not reach a case where the flaw in his title is only a claim of defect, until at a later time it is established, one way or the other, by a court judgment."

Justice Brandeis said in North American Oil Consol. v. Burnet, 286 U.S. 417, 52 S. Ct. 613, 615, 76 L.Ed. 1197: "If a taxpayer receives earnings under a claim of right and without restriction as to its disposition, he has received income which he is required to return, even though it may still be claimed that he is not entitled to retain the money, and even though he may still be adjudged liable to restore its equivalent."

Following this the Circuit Court of Appeals for the Ninth Circuit in Brown v. Commissioner, 63 F.2d 66, said [page 68]:

"Revenue taxation requires that one who receives a sum of money subject to his disposition should account for the same as income in the year he receives it and not at some indefinite future time of his own selection. Should the practice urged by petitioner be followed, the collection of the revenues of the national government would be uncertain, for the government would be taking the chance that the money is still available for taxation during subsequent years, and that the taxpayer is still solvent."

See, also, Board v. Commissioner, 6 Cir., 51 F.2d 73, certiorari denied, 284 U.S. 658, 52 S.Ct. 35, 76 L.Ed. 557; Burnet v. Sanford & Brooks Co., 282 U.S. 359, 51 S.Ct. 150, 75 L.Ed. 383; Lunsford v. Commissioner, 6 Cir., 62 F.2d 740; Lewis v. United States, D.C., 17 F.Supp. 543; Renwick v. United States, 7 Cir., 87 F.2d 123.

The taxpayer, when he received the bonus, believed himself legally entitled thereto and later returned it, not because he had been directed to do so by any tribunal with jurisdiction so to do but in pursuance of a voluntary settlement of the controversy with the stockholders. He did that which followed in correction of erroneous action by the board. The corporation was divested of legal title to the money; that passed to the taxpayer, irrespective of the equity resting in the stockholders to recover it. The money was in fact income and therefore taxable.

The judgment of the District Court is reversed and remanded with directions to proceed in accord with this opinion.