HARRISON EPPERLY, DONNETTE EPPERLY, AND UNITED BRAKE SYSTEMS, INC. *v.* E. & P. BRAKE BONDING, INC., ROBERT PUCILLO AND RUBY PUCILLO.

[No. 2-174A39. Filed May 24, 1976.]

*Alan H. Lobley, Ice Miller Donadio & Ryan,* of Indianapolis, for appellants.

*Lynnville G. Miles,* of Indianapolis, for appellees.

## CASE SUMMARY

BUCHANAN, P.J. — Appellant-Counter-Defendant Harrison R. Epperly (Epperly) appeals from a judgment in favor of Counter-Plaintiff, E. & P. Brake Bonding, Inc. (E. & P.), claiming that a prior settlement agreement barred recovery.

Reversed.

## FACTS

The evidence and facts most favorable to the trial court's judgment are:

Epperly and Robert W. Pucillo (Pucillo) operated a brake bonding business, first as a partnership, and then as E. & P. Brake Bonding, Inc.

Each owned one half of the stock of the corporation and was a director. Epperly was President and General Manager, and Pucillo spent most of his time in the plant as a Production Manager.

A disagreement arose between them when Pucillo suspected that Epperly was converting corporate assets. Pucillo filed suit against Epperly and E. & P. on May 10, 1971. Among other things, he asked that the corporation be placed in receivership until the dispute was resolved.

Victor Pfau (Pfau) was appointed Receiver for E. & P. on August 11, 1971, and qualified as such on August 17, 1971.

Pfau, as Receiver, retained all of the corporate employees, including Epperly and Pucillo.

In operating the corporation, Pfau continued to do business with Philips Industrial Components, Inc. (Philips) . . . a major source of business for E. & P.

The day before the Receiver qualified, August 16, 1971, United Brake Systems, Inc. (United)—which became a direct competitor of E. & P.—was incorporated with Epperly as one of its incorporators and later a director. Other evidence established that Epperly had made arrangements for the formation of United during his tenure with E. & P.

During 1971 Epperly also made major purchases of camera equipment with E. & P. corporate funds and in turn sold this camera equipment to an employee of Philips. When the Philips employee reimbursed Epperly for this merchandise, he personally retained these funds.

On September 3, 1971, Epperly gave Pfau a letter of resignation as President dated September 3, 1971, to be effective September 10, 1971, and informed Pfau that he was going to take a long vacation.

On September 10, 1971, Epperly handed Pfau a letter from Philips dated September 3, 1971, cancelling all purchase orders with E. & P. Pfau later testified that these Philips purchase

orders constituted approximately one half of E. & P.'s business. Pfau and Pucillo, however, were able to reacquire these specific purchase orders several days later.

When Pfau arrived at E. & P. on Monday, September 13, 1971, he discovered that E. & P. had no employees. The telephone and brake bonding equipment were no longer in working order, and there was disorder in the supplies.

Pfau immediately went to United and observed that it was operating a competing business with E. & P. and that Epperly was associated with United.

Epperly continued to compete with E. & P. through United. During the months of November and December of 1971, he did approximately $6,000 worth of business with Philips.

From the time of his appointment as Receiver, Pfau encouraged Epperly and Pucillo to negotiate and settle their differences, and their negotiations culminated in the following Settlement Agreement executed January 25, 1972:

> This settlement and agreement executed by and between Robert W. Pucillo and Harrison H. Epperly this —— day of January, 1972.
>
> WITNESSETH:
> (1) WHEREAS, Robert W. Pucillo and Harrison E. Epperly have heretofore operated a brake bonding business for many years under the firm name and style of E. & P. Brake Bonding Company, and
> (2) WHEREAS, the aforesaid partners agreed to incorporate their business and in August of 1970 did incorporate in the name of E. & P. Brake Bonding, Inc., which is an Indiana corporation, (hereinafter called the "Corporation"), and
> (3) WHEREAS, the partners did transfer, convey and assign partnership assets to the said Corporation, and
> (4) WHEREAS, since the aforesaid date of August 1970 the partners have operated the said corporation as a successor to the said partnership, and
> (5) WHEREAS, no shares were ever issued but each partner is and has been entitled to one-half of all the shares, ownership, equity and interest in the said Corporation, and

(6) WHEREAS, disputes have arisen between the aforesaid partners and suit having been filed on 10 May 1971 in Room 7 of the Superior Court of Marion County under Cause No. S771-469, which suit requested a restraining order, injunction, damages, accounting and

(7) WHEREAS, on 13 August 1971 certain defendants filed their cross-complaint for damages, and

(8) WHEREAS, on 11 August 1971 the aforesaid Superior Court of Marion County did appoint a receiver and the said receiver qualified as such receiver on 17 August 1971 and has acted as receiver of the said Corporation to the present date, and

(9) WHEREAS, the parties hereto have settled and compromised their differences, it is their desire that all claims of Robert W. Pucillo versus any of the defendants be settled, compromised and dismissed, and that all claims of any of the defendants against Robbert W. Pucillo be settled, compromised and dismissed, and the said Harrison R. Epperly shall transfer and assign all his interest, as aforesaid, in the Corporation to the Corporation and upon that execution of this assignment the Corporation will be released from every claim of every kind which the said Harrison R. Epperly has against the said Corporation, and

(10) WHEREAS, Harrison R. Epperly and Robert W. Pucillo operated as a partnership as aforesaid, which partnership has ceased to exist and the assets of said partnership were transferred to the said Corporation therefore each of the parties hereto agrees to relinquish any and all claims which either of them has now or may have had at any time against the partnership or its assets;

It is, therefore, agreed as follows:

(a) Harrison R. Epperly agrees that he will immediately resign as an officer and director of the Corporation and shall execute such documents and do such acts as may reasonably be requested to effect the transaction contemplated by this agreement and including but not limited to transferring to the Corporation any right, title, interest or ownership of stock in the Corporation; that he will effect this agreement within the minute books of the Corporation and will do and perfect any past actions which ought to be done

in the best interest of the Corporation; and Harrison R. Epperly hereby released any and all claims, of whatsoever kind, he has or has had against the Corporation;

(b) Harrison R. Epperly further agrees to deliver to the Corporation all books, records, papers, documents and any and all other property and moneys of the Corporation and to execute a release of all interests in the Corporation;

(c) The total consideration to be paid to Harrison R. Epperly shall be Seventy Thousand ($70,000) Dollars to be paid on the following terms, to-wit:

  I. Fifty Thousand ($50,000) Dollars paid February 1, 1972.

  II. Twenty Thousand ($20,000) Dollars to be paid on January 3, 1973.

(d) In further consideration of the above Seventy Thousand ($70,000) Dollars Harrison R. Epperly hereby sells, assigns, releases and sets over any and all interest, claim, contract, right, accrual, expectancy, etc., of any kind and nature whatsoever, expressed or implied, tangible, real or personal which he now has in the partnership or the Corporation to the Corporation. It is the expressed intent and purpose of this agreement to make this sale and transfer complete and total and to include all interests which Harrison R. Epperly may have whether expressly stated herein or not;

(e) The payment of the aforesaid amounts are to be secured by a security agreement on all machinery, equipment, accounts and contracts receivable of E. & P. Brake Bonding, Inc., or in the alternative, one-twelfth of the balance shall be deposited in a special sinking fund account each month for the retirement of the debt in 1973.

(f) In the event any party fails to perform the terms of this agreement, the other party shall have, in addition to any other rights at law or equity, the right of specific performance;

(g) This agreement shall be governed by the laws of the State of Indiana and shall inure to the benefit of and be binding upon the parties herein and their respective successors, assigns, administrators, executors and heirs;

(h)  In addition to the Seventy Thousand ($70,000) Dollars above mentioned Harrison R. Epperly shall be given quitclaim deeds to all real property and more particularly to the realty held in the name of the partnership but subject to the condition that the Corporation shall continue to use the office and warehouse (Parcel 1) now occupied by the Corporation without cost for a period of four (4) months from date; all other property now occupied by the Corporation (Parcel 2) for a period of sixty (60) days after the execution of this agreement without cost to the Corporation; and if not so vacated at the time indicated rent shall be paid at Three Hundred ($300.-00) Dollars per month for each parcel. Said property when vacated shall be clean and with all material, equipment, and trash removed and shall be in good condition, ordinary wear and tear accepted;

(i)  By virtue of the fact that there once existed a partnership and subsequently a "Subchapter S" corporation, Harrison R. Epperly and Robert W. Pucillo do hereby mutually release each other from any claim which either now has or ever has had against the other and both Harrison R. Epperly and Robert Pucillo also release both the partnership and the Corporation from any and all claims which either of them now has or may at any time have had against the said partnership or Corporation;

(j)  Harrison R. Epperly hereby warrants and agrees that there is no outstanding undisclosed, liquidated, unliquidated, disputed or accrued debt, liability, agreement, contract, adverse interest, claim, etc., against the Corporation and assumes personal liability for any such amount the Corporation may become indebted for by reason of Harrison R. Epperly's failure to so disclose;

(k)  At the present time there is an account due and owing Corporation by a Fleenor Auto Stores in the sum of Sixteen Thousand ($16,000) Dollars. Harrison R. Epperly agrees to guarantee the payment of 80% of said sum. If 80% of said sum has not been paid by January 3, 1973, the deficiency may be deducted from the final payment to Epperly.

(l)  In consideration of the quitclaiming and conveying of any and all interest which Robert W. Pucillo may have in the real estate now titled in the name of Harrison R. Epperly, Harrison R. Epperly and Don-

nette Epperly, Harrison R. Epperly and Donnette Epperly as husband and wife, or E. & P. Brake Bonding, a partnership, Harrison R. Epperly agrees that he has disclosed all debts, claims, obligations, loans and liens or possible liens now existing against all of said real estate and further agrees that any such debts, claims, obligations, loans and liens as aforesaid are to be the sole obligation of Harrison R. Epperly and he agrees to pay the same and to hold harmless Robert W. Pucillo, E. & P. Brake Bonding, a partnership, and E. & P. Brake Bonding, Inc.

(m) It is agreed that judgment be entered herein Cause No. S771-469 in the Marion Superior Court, which judgment and entry shall incorporate this settlement and agreement and such judgment shall dissolve all outstanding injunction and restraining orders.

(n) It is further agreed that the aforesaid judgment shall recite that the appointment of receiver in said cause is affirmed and that the receiver's final report is approved and that neither party hereto has any claim or demand versus the said receiver.

(o) This settlement is made by all parties as a good faith settlement of their disputes and such party has disclosed to the other all material facts necessary to evaluate such a settlement. If the assets or stock of E. & P. Brake Bonding, Inc., is sold or a contract for sale is executed prior to August 1, 1972, Harrison Epperly will be entitled to fifty percent (50%) of any amounts by which the value of stock or the business in the sale, consolidation or merger exceeds Two Hundred Eighty Thousand ($280,000) Dollars.

(p) The performance of this agreement will be guaranteed by the parties and their wives and approved by Victor Pfau as receiver of E. & P. Brake Bonding, Inc. Such receiver will also execute the security agreement provided herein.

/s/ HARRISON EPPERLY    /s/ JOYCE DONNETTE EPPERLY
/s/ ROBERT W. PUCILLO   /s/ RUBY PUCILLO
/s/ VICTOR PFAU

As Receiver of
E. & P. Brake Bonding, Inc.

Testimony revealed that payment of $70,000 to Epperly for his one half interest in E. & P. was arrived at by reducing Epperly's one half interest in the gross assets of E. & P. by

an amount representing damage to the corporation arising from his conduct inimical to the corporation while he served as an officer and director.

Although Pfau testified that he had not taken part in the negotiations resulting in this Settlement Agreement, he stated he had encouraged a settlement, read the Settlement Agreement, and understood it when he signed and approved it in his capacity as Receiver of E. & P.

The trial court which had appointed Pfau as Receiver and entertained Pucillo's suit against Epperly then released and discharged the Receiver; specifically read, approved, and incorporated into its judgment this Settlement Agreement; and discharged with prejudice Pucillo's claim against Epperly and E. & P. and the counter-claim of Epperly and E. & P. against Pucillo.

Subsequent to the Settlement Agreement, Epperly functioned as one of the directors of United and continued to do business with Philips.

The record reflects that by the time of the Settlement Agreement, all parties were aware of Epperly's association with United and United's continued competition with E. & P. When the parties to the Settlement Agreement considered and settled all claims against each other and released E. & P., no covenant not to compete was incorporated into the Settlement Agreement.

On August 28, 1972, Epperly sued E. & P., Pucillo, and Pucillo's wife, alleging that the defendants had failed to pay $1,916 of the initial $50,000 payment as provided in the Settlement Agreement, had failed to prove that they were making deposits in an escrow account for the additional $20,000 in the settlement, and owed Epperly $10,000 for unpaid rent and damage to the premises leased by him for a time after the settlement to E. & P. He asked that a Receiver be appointed for E. & P. and he be awarded judgment in the amount of $31,916.

The defendants counterclaimed against Epperly mainly on the theory of Epperly's breach of a corporate fiduciary duty as an officer and a director of E. & P., unlawful competition with E. & P. through United, conversion of corporate assets, and slander.

The trial court awarded Epperly $22,216 on his complaint against E. & P., Pucillo, and Pucillo's wife. Additionally, the trial court awarded E. & P. $10,530 on its counterclaim against Epperly.

It is from the judgment on the counterclaim only that this appeal is taken by Epperly.

## ISSUE

The sole issue is: Was E. & P. bound by the Settlement Agreement of January 25, 1972, so as to prevent recovery of damages on its counterclaim?

## PARTIES CONTENTIONS

Epperly's basic contention is that the trial court based its judgment on E. & P.'s counterclaim on Epperly's breaches of his fiduciary duty to E. & P. He asserts that this award was improper, however, as all his acts of misconduct and breaches were taken into consideration and included in the Settlement Agreement—an agreement which released him and bound all parties, including E. & P.

E. & P. et al. reply that the judgment of $10,530 in its favor on the counterclaim was proper as the evidence established actionable misconduct by Epperly. They assert E. & P. was not a party to the Settlement Agreement and therefore never compromised any claims it had as a corporation against Epperly.

## DECISION

*CONCLUSION*—It is our conclusion that the trial court's judgment of $10,530 in favor of E. & P. on its counterclaim

was contrary to law and should be reversed because E. & P. was bound by the Settlement Agreement.

In arriving at its judgment awarding Epperly $22,216 on his claim, the trial court simply carried out the provision of the Settlement Agreement.[1]

It is not so clear as to how the trial court arrived at its $10,530 judgment for E. & P. on its counterclaim. It could not be based on Epperly's guarantee of the Fleenor account to E. & P. as the record reflects that Fleenor paid E. & P. Likewise the record indicates that this judgment was not based on slander damages.

We can therefore only conclude that the trial court based its judgment on the counterclaim on the acts of Epperly complained of as a breach of his fiduciary duty as an officer and director of E. & P. or on damages resulting from competition (through United) after he ceased to be connected with E. & P. In either event E. & P. was not entitled to damages for Epperly's conduct—whether prior or subsequent to his departure from E. & P. Any damages for his conduct were released by E. & P.'s execution of the Settlement Agreement (with the Receiver joining in), or were waived by operation of equitable estoppel.

It is the law in this state, and elsewhere, that an officer or director stands in a fiduciary relationship to his corporation. *Hartung* v. *Architects Hartung/Odle/Burke, Inc.* (1973), 157 Ind.App. 546, 301 N.E.2d 240; *Tower Recreation, Inc.* v. *Beard* (1967), 141 Ind. App. 649, 231 N.E.2d 154; *Schemmel* v. *Hill* (1930), 91 Ind.App. 373, 169 N.E. 678.

This court has embellished on the general rule by declaring:

[T]he fiduciary must deal fairly, honestly and openly with his corporation and fellow stockholders. He must not be distracted from the performance of his official duties by

---

1. When the $1,916 left unpaid by Pucillo on the initial $50,000 payment, the $20,000 that was to go into a sinking fund or be secured, and a $300 rent payment are added, a total of $22,216 is reached.

personal interests. *Hartung* v. *Architects Hartung/Odle/ Burke, Inc., supra* at 243 (citations omitted).

More specifically, Indiana recognizes the "general rule . . . that the fiduciary cannot lure away corporate business or clients which in equity and fairness belong to his corporation." *Id.* at 245.

It is substantially undisputed that Epperly breached his fiduciary duty as an officer and director of E. & P. He committed wrongs against the corporation, inter alia, by setting up a competing business—taking E. & P.'s employees and a large customer (Philips). After resigning as an officer and director he continued to compete with E. & P. After some months he as an owner of one half of the stock of E. & P. entered into a Settlement Agreement in which he and the other one half owner released each other of "all claims." The consideration ($70,000) for Epperly's stock was arrived at by deducting from the value of his one half interest in the corporate assets various sums for his breaches of duty to the corporation, thereby leaving Pucillo in complete control of E. & P., i.e., its sole stockholder. This occurred when Epperly was openly competing with E. & P. some months after his departure.

Thus the two principals in the corporation owning all its stock settled their claims against each other and released each other from all claims. In so doing Pucillo is barred from reasserting claims already compromised and settled. *See Bowman* v. *East Enterprise State Bank* (1935), 100 Ind.App. 682, 197 N.E. 726, and the corporation, E. & P., is estopped to seek damages through the same claims. It is estopped to deny a settlement made by its only shareholders as not being the action of the corporation itself.

Ordinarily the acts of the stockholders are regarded as their personal acts and not those of the corporation, but there are exceptions. Fletcher discusses these exceptions:

Contracts made by the sole owner or owners of a corporation may, under proper circumstances, be regarded as made by it although not formally in its name. This, however, is but the application of a general rule that simple contracts made in the name of another may be treated as corporate contracts without formal execution by it. Performance by them may inure to its benefit.

Another situation where the *acts of members are regarded as those of the corporation*, is that *where the members deal among themselves and alone are concerned*. W. FLETCHER, CYCLOPEDIA OF THE LAW OF PRIVATE CORPORATIONS § 42, at 206 (perm ed. rev. 1974) (hereinafter cited as FLETCHER) (emphasis added). *See also id.* § 46, at 272, nn. 1-3.

Pucillo, after receiving the benefit of becoming the sole stockholder in return for Epperly's stock and releasing Epperly from all further claims, cannot subsequently equitably reassert the same claims under the guise of separate corporate entity. Pucillo cannot exact his just due as an individual and then collect again as the sole stockholder of a corporation which he claims is not bound by the agreement. This is not equity:

If a court of equity could not look behind the corporation to the shareholders, who are the real and substantial beneficiaries, and ascertain whether these ultimate beneficiaries of the relief it is asked to grant have any standing to demand it, the maxim that equity looks to the substance, and not the form, would be very much limited in its application.
*Home Fire Ins. Co.* v. *Barber* (1903), 67 Neb. 644, 665, 93 N.W. 1024, 1032.
*See also Diamond* v. *Diamond* (1951), 200 Misc. 1055, 107 N.Y.S. 2d 508, *aff'd. mem.*, 281 App.Div. 1015, 121 N.Y.S. 2d 280 (1st Dep't. 1953), *rev'd on other grounds*, 307 N.Y. 263, 120 N.E.2d 819 (1954).

So we too must look through E. & P. and estop it from asserting the claims barred to Pucillo.

The equitable estoppel preventing E. & P. from reasserting a claim for the misconduct of Epperly as an officer and director is further enhanced by the fact that the Receiver (Pfau)

officially "approved" and executed the Settlement Agreement after encouraging settlement negotiations between the parties ... action which was approved by the court which appointed the Receiver and incorporated in its judgment.

So we necessarily conclude that any misconduct by Epperly up to the Settlement Agreement (executed January 25, 1972) could not serve as a basis for judgment on the counterclaim because E. & P. was estopped to deny it was bound by the Settlement Agreement and because the Receiver acknowledged and entered into that Agreement on behalf of E. & P.

Neither can competition by Epperly (through United) after Epperly's departure from E. & P. serve as a basis for judgment on the counterclaim.

The general rule is that in the absence of contractual provision to the contrary, an officer or director may compete with his former employer:

> The fact that one was once a director or officer of a corporation does not preclude his engaging in a business similar to that conducted by the company. It is said that it is a common occurrence for corporate fiduciaries to resign and form a competing enterprise and that unless restricted by contract, this may be done with complete immunity, because freedom of employment and encouragement of competition generally dictate that such persons can leave their corporation at any time and go into a competing business. It is recognized that in doing so they can use in their own enterprise the experience and knowledge they gained while working for their former corporation, *and that they can, at least in the absence of a contract provision to the contrary, solicit the customers of their former corporation for business* unless the customer list is itself confidential. 19 AM. JUR. 2d *Corporations* § 1282, at 690-91 (1965). (emphasis added).

This rule has support throughout the United States. *See, e.g.,* 19 C.J.S. *Corporation* § 785 (1940) (and cases cited at 161, n.12 and *id.* (Supp. 1975)) ; Annot., 64 A.L.R. 782, 789 (1930) (and cases cited A.L.R. BLUE BOOK OF SUPP. DEC.).

An exception to the rule may exist to the extent a competing director who conspired and established his competing

business during his tenure with the corporation may be liable to the corporation; *see, e.g., Aero Drapery of Kentucky, Inc.* v. *Engdahl* (1974), 507 S.W.2d 166; *Duane Jones Co.* v. *Burke* (1954), 306 N.Y. 172, 117 N.E.2d 237. *Cf., e.g., Bancroft-Whitney Co.* v. *Glen* (1966), 64 Cal. 2d 327, 49 Cal. Rptr. 825, 411 P.2d 921, *Ellis & Marshall Associates, Inc.* v. *Marshall* (1973), 16 Ill. App. 3d 398, 306 N.E.2d 712; however, close examination of most of these cases reveals that the former officer or director is actually being penalized for breaches while employed by the corporation—not subsequent competition.

While Epperly appears to have conspired to set up a competing business while still an officer and director of E. & P., that fact was known to Pucillo and E. & P. when the Settlement Agreement was executed some four months after Epperly was openly competing with E. & P. It released the parties from all claims. E. & P. had its golden opportunity to hold Epperly accountable for competing with the corporation. Deductions were made from the value of Epperly's interest but no covenant not to compete was included in the Settlement Agreement, so Epperly's competition after execution of the Settlement Agreement could not properly be the basis for the judgment on the counterclaim against Epperly.

There being no other basis or theory on which that judgment can be justified, it must be reversed.

Reversed.

Sullivan, J. and White, J., concur.

NOTE.—Reported at 348 N.E.2d 75.