Ida M. GRIFFIN; Jack W. Griffin; David F. Tudor; Anthony Stroinski; Robert E. Sauer; and Dorothy M. Sauer; On Behalf of Themselves and All Others Similarly Situated, Plaintiffs-Appellants,

v.

CARMEL BANK & TRUST COMPANY; Larry R. Mohr; Fred W. Garver; James W. Catton; David H. Markstone; Milton J. Fineberg; James C. Hilliard; and United States Fidelity and Guaranty Company, Defendants-Appellees.

No. 06A01–8703–CV–57.

Court of Appeals of Indiana, First District.

July 8, 1987.

Rehearing Denied Aug. 21, 1987.

John R. Price, P.C., Burroughs & Price, Indianapolis, for plaintiffs-appellants.

Jeffrey R. Gaither, Klineman, Rose, Wolf & Wallack, Indianapolis, for defendants-appellees.

## STATEMENT OF THE CASE

NEAL, Judge.

Plaintiff-appellants, Ida M. Griffin, et al., as shareholders of the Carmel Bank and Trust Company (Shareholders), appeal an adverse summary judgment in favor of two of the defendants, Milton J. Fineberg (Fineberg) and James C. Hilliard (Hilliard), in a derivative action.

We reverse.

## STATEMENT OF THE RECORD

Shareholders, Ida M. Griffin, Jack W. Griffin, David F. Tudor, Anthony Stroinski, Robert E. Sauer, and Dorothy M. Sauer, on behalf of themselves and other owners of common stock in the Carmel Bank and Trust Company, filed a derivative action on May 10, 1985, against Carmel Bank and Trust Company (Carmel Bank), Larry R. Mohr, Fred W. Garver, James W. Catton, David H. Markstone, Fineberg, and Hilliard. In amended complaints other named defendants were dismissed from the action, but on the fifth amended complaint, filed on November 25, 1986, the United States Fidelity and Guaranty Company (USF & G), the surety on Carmel Bank's fidelity bond, was made a party defendant. Proceedings hereafter discussed were raised on the fifth amended complaint.

Count I of the fifth amended complaint alleged that Mohr, Garver, Catton, Markstone, Fineberg, and Hilliard were all officers, directors, members of loan and executive committees, chairmen of the board, and otherwise in control of Carmel Bank. It alleged that there was a continuing conspiracy among the defendants to defraud the bank wherein they violated their fiduciary duty to Carmel Bank by making large loans to themselves, in violation of banking statutes and regulations. These loans, totaling $2,658,000.00, were largely lost. The loans, made at different times, to either themselves or their affiliates, were as follows:

"Larry R. Mohr — Affiliated loans:

| | |
|---|---|
| Larry R. Mohr (MFS Associates) | $191,000.00 |
| Monticello Flying Service, Inc. | 210,000.00 |
| Greg Mohr (Son of Larry R. Mohr — commercial loan) | 80,000.00 |
| Michael Mohr (Son of Larry R. Mohr — commercial loan) | 24,000.00 |
| Reuben H. Yohler (Father-in-law of Larry R. Mohr) | 22,000.00 |
| Capitol Leasing, Inc. (originated at the Bank in the name of Carmel Associates, Inc., a company owned by Reuben H. Yohler) | 103,000.00 |
| Joe R. Thompson (Former horse trainer for Larry R. Mohr) | 42,000.00 |
| Harold E. Bean, Jr. (Former Washington Township Assessor of Marion County and friend of Larry R. Mohr) | 45,000.00 |
| Craig Campbell (Former Indiana State Representative and friend of Larry R. Mohr) | 150,134.00 |
| TOTAL | $867,134.00 |

David H. Markstone and Fred W. Garver — Affiliated Loans:

| | |
|---|---|
| Lincoln Farms, Inc. | 203,000.00 |
| (Loan assumed by Milton J. Fineberg) (Lincoln Farms, Inc. was a corporation which owned ⅓ of a farm in Illinois. The farm in Illinois was owned ⅓ by Larry Mohr. Lincoln Farms, Inc. was owned ¼ by David Markstone, ¼ by Fred Garver, ¼ by Michael D. Ripley, ¹⁄₁₀ by Milton J. Fineberg, ¹⁄₁₀ by James C. Hilliard and ¹⁄₂₀ by Phil Bainbridge.) | |
| Phil Bainbridge | 59,000.00 |
| Mike Ripley | 210,000.00 |
| Fred W. Garver | 180,000.00 |
| Fred W. Garver (Participation to Indiana National Bank; charged by to Carmel Bank) | 157,000.00 |
| James C. Hilliard (Note paid by Hilliard) | 58,000.00 |
| TOTAL | $867,000.00 |

Fred W. Garver — Affiliated loans:

(The personal obligation of Garver is set forth in the above category.)

A. Allied Fidelity Affiliated Loans:

| | |
|---|---|
| Prestige Aviation, Inc.<br>(The company owned and leased airplanes to Allied Fidelity Corporation. The principals in the business were Charles Scheumann and Harold Croquart who were also the principals in Allied Fidelity Service Corporation, Allied Fidelity Insurance Company and Allied Fidelity Corporation. Fred W. Garver reported on his financial statements to the Bank, as noted by the FDIC in its examination of July 5, 1985, that Garver was a 'significant' stockholder of Allied Fidelity Corporation.) | $214,000.00 |
| Allied Fidelity Services, Inc. | 181,000.00 |
| Harold Croquart | 210,000.00 |
| Charles Scheumann | 114,000.00 |
| **TOTAL** | **$710,000.00** |

B. Other affiliated loans with Fred Garver:

| | |
|---|---|
| Quality Equipment, Inc.<br>(A company owned in part by Fred W. Garver and a principal of which was Fred Garver's brother, D. H. Garver.) | 210,000.00 |
| Robert Persinger<br>(Persinger is the treasurer of Quality Equipment, Inc. and is the brother-in-law of Fred W. Garver.) | 55,000.00 |
| James M. Robison<br>(A friend of Fred W. Garver who referred him to the Bank.) | 210,000.00 |
| **TOTAL** | **$475,000.00** |
| **GRAND TOTAL** | **$2,658,000.00"** |

*Record* at 343–46.

The fifth amended complaint also alleged that Markstone obtained personal loans in the sum of $158,445.00, and a loan for a corporation named Fox Hollow Farms, Inc. in the amount of $107,228.00. Count I sought judgment against only Mohr, Markstone, Garver, and Catton for $2,658,000.00 for the bad loans; $2,000,000.00 for exemplary damages; and $2,000,000.00 for loss of earnings.

Counts II, III, IV, and V all incorporated Count I, and in various ways repetitively advanced different theories against different defendants all revolving around the breach of fiduciary relationships as directors and officers in making the inside illegal loans which caused Carmel Bank's loss and its stock to depreciate. Counts VI and VIII stated claims against USF & G on its fidelity bond.

Count VI, as concerns us here, is against Fineberg and Hilliard only, and incorporates Count I. It alleges that Fineberg and Hilliard were directors and participated in voting in favor of granting the illegal and improper loans, failed to attend a significant number of meetings, and voted dividends that impaired the stock. It alleges that they had duties to use reasonable care, operate the bank in a legal and safe manner, select honest and competent officers, and investigate the loan portfolio. It is also alleged that Fineberg and Hilliard received illegal and unsecured loans at the time they voted the illegal loans to others, although these loans were subsequently repaid. The prayer in Count VI against Fine-

berg and Hilliard was for the loss in value of the stock in the sum of $633,578.00; loss of the loans which affected capital in the amount of $2,658,000.00; and loss of good will in the amount of $2,000,000.00.

On March 26, 1985, Markstone, his wife, June M. Markstone, Fox Hollow Farms, Inc., and Michael E. Mohr, filed a petition for bankruptcy in the United States Bankruptcy Court for the Southern District of Indiana, Indianapolis Division. Thereafter, on February 4, 1986, the Carmel Bank filed an adversary proceeding, objecting to Markstone's discharge and praying for money damages due to fraud allegedly committed by Markstone on creditors in transferring property, executing releases of security, and making false statements in the bankruptcy proceedings. On June 26, 1986, Carmel Bank, Markstone, and his wife entered into a reaffirmation agreement. Shareholders were neither consulted nor were they a party to it. The agreement recited notes as follows: 1984, two notes evidencing loans in the amounts of $84,300.00 and $7,000.00 respectively; a note executed on January 2, 1985 for $57,939.00; and a note executed by Markstone for Fox Hollow Farms, Inc. in the amount of $107,220.26. The agreement, subject to the approval of the bankruptcy court, provided that Markstone and his wife would reaffirm these debts, execute a new note totaling $256,000.00, payable with interest over 40 years in 480 installments, and give a third mortgage on certain real estate. Paragraph 23 then provided:

"Subject to the Court's approval of this agreement, and effective upon the effective date of this Agreement and the settlement contemplated herein, and in consideration for the Markstones' convenants and obligations herein contained, Carmel Bank, and its representatives, agents, employees, successors and assigns, do hereby release and forever discharge Markstone and Mrs. Markstone and their respective heirs, administrators, successors and assigns, from and against any and all liability, debts, suits, causes of action, claims and demands of every kind or character whatsoever, at law or in equity, which Carmel Bank may now have or to which it may hereafter become entitled...."

*Record* at 178.

Finally, the agreement provided that Carmel Bank, upon approval of the reaffirmation agreement, would no longer oppose the discharge. The bankruptcy court approved the agreement and discharge was granted.

Fineberg and Hilliard thereafter filed motions for summary judgment based upon paragraph 23, claiming that the release of one joint tort-feasor, Markstone, released all. The motions were supported by certified copies of the adversary proceeding in the bankruptcy court and the reaffirmation agreement. Shareholders did not file counteraffidavits until after judgment was entered. The trial court granted the motions, and Shareholders have perfected this appeal.

## ISSUES

The issues, restated by us, are as follows:

I. Is the doctrine that the release of one joint tort-feasor releases all applicable to derivative actions under the facts of the case.

II. Are the defendants in this case joint or independent and successive tort-feasors.

## DISCUSSION AND DECISION

The rules governing summary judgment are well settled. The trial court, and the reviewing court, must consider the evidentiary material most favorable to the party opposing the motion, and resolve all doubts against the movant. *Indiana University Hospitals v. Carter* (1983), Ind.App., 456 N.E.2d 1051. Even where the facts are undisputed the ability to draw from these facts conflicting inferences, which would alter the outcome, makes summary judgment inappropriate. *Carrell v. Ellingwood* (1981), Ind.App., 423 N.E.2d 630. *trans. denied.* The evidence may not be weighed. *Id.* The burden is on the movant to demonstrate the absence of a dispute of material facts. *Id.*

However, the non-moving party may not simply rest on his pleading. When the moving party establishes the lack of genuine issue of material fact, the opposing party must go forward and contest the motion by setting forth specific facts which show that there is a genuine factual issue. *Criss v. Bitzgaio* (1981), Ind., 420 N.E.2d 1221.

A summary judgment proceeding is not a trial by affidavits, nor can it be used as an abbreviated trial. *Carrell, supra.*

■ As a general rule the release of one joint tort-feasor releases all. *Bellew v. Byers* (1979), 272 Ind. 37, 396 N.E.2d 335; *Cooper v. Robert Hall Clothes, Inc.* (1979), 271 Ind. 63, 390 N.E.2d 155; *Wecker v. Kilmer* (1973), 260 Ind. 198, 294 N.E.2d 132; *Flagg v. McCann Corp.* (1986), Ind. App., 498 N.E.2d 76; *Young v. Hoke* (1986), Ind.App., 493 N.E.2d 1279; and *State v. Totty* (1981), Ind.App., 423 N.E.2d 637. In those cases courts held that joint tort-feasor liability is created where there is a convergence of acts of two or more defendants causing single injury to a plaintiff. The rule was applied as follows. In *Cooper* the plaintiff, who had slipped upon a store's floor, sued the store and two others. Settlement with the two others, though expressly reserving the right of action against Robert Hall, served to release Robert Hall as a matter of law. *Totty* and *Bellew* involved motor vehicle accidents. In each case the acts of two or more drivers caused injury to the plaintiff, and the release of one was held to release all. *Young* concerned a two-car automobile accident, and the release of the auto manufacturer of plaintiff's claim on a products liability theory released the other driver. In *Flagg* a release given the intoxicated driver of the other car released the tavern owner who sold the drinks. In each case the court held that the defendants were joint tort-feasors. The *Wecker* court, however, distinguished between joint tort-feasors and independent and subsequent tort-feasors. In the latter instance a factual situation was presented as to the intent of the parties and whether the injured party had received full satisfaction.

Shareholders attack the trial court's ruling by claiming that the above authorities are erroneous, and that the facts here do not disclose a joint tort-feasor situation. It is clear that the rule stated above has been under increasing attack by this court and in other jurisdictions. Nevertheless, the rule in Indiana is clear and we shall follow it where applicable. Citing *Dotlich v. Dotlich* (1985), Ind.App., 475 N.E.2d 331, Fineberg and Hilliard first argue that it is axiomatic that the rights of the Shareholders cannot exceed that of the corporation. They then argue that the action is against Markstone, Garver, Mohr, Fineberg, Hilliard, and Catton for joint participation in making illegal loans. Therefore, under *Cooper* and the cases decided under it, Fineberg and Hilliard, being joint tort-feasors, would be discharged by the release of Markstone. The implication is also present that all other defendants would be discharged as well. We are of the opinion that the analysis of the question by both parties and the trial court is erroneous. The joint tort-feasor doctrine is not applicable here.

First, distinctions exist between a derivative suit and the cases cited. The cases cited herein are classic tort cases in which the acts of separate defendants converge to cause a single injury. The alleged acts causing injury in the case at bar were many, separate, and covered a course of many years of which the loans to Markstone were but a few. Furthermore, this suit is a derivative action in equity for breach of a fiduciary duty. Therefore, some questions may exist as to whether the action is in tort at all. The resolution of the question before us lies within an application of the principles of corporation law.

■ It needs no elaborate citation of authority to demonstrate that directors and officers of a corporation act in a fiduciary capacity, and their acts must be for the benefit of the corporation. *Dotlich, supra; Epperly v. E & P Brake Bonding, Inc.* (1976), 169 Ind.App. 224, 348 N.E.2d 75. They are liable for breaches of trust. *Dotlich, supra, Epperly, supra.* Directors are jointly and severally liable for voting to

make illegal loans to officers or directors, but a director who becomes liable thereon is entitled to contribution. IND.CODE 23–1–10–2(e); IND.CODE 23–1–2–18. A director or officer is liable for loss of corporate assets through his negligence, fraud, or abuse of his trust. *Mowbray v. Antrim* (1890), 123 Ind. 24, 23 N.E. 858; *see* 6 I.L.E. *Corporations* sec. 148 (1958).

■ 3A FLETCHER CYCLOPEDIA CORPORATIONS, Permanent Edition ch. 11, secs. 1102, 1103, and 1104, states in effect that a corporation cannot condone the fraud of a director or officer by which the assets of a corporation have been misappropriated except by the *unanimous* consent of all of the stockholders. Otherwise, a majority of directors, or a director who might control a majority vote of the corporation's stock, would be able to despoil the corporation with impunity. A majority of the stockholders cannot ratify fraudulent actions of the directors so as to preclude a derivative action. *See Green v. Felton* (1908), 42 Ind.App. 675, 84 N.E.2d 166; *Ford v. Ford Roofing Products Co.* (1926), Mo.App., 285 S.W. 538. In *First Merchants National Bank v. Murdock Realty Co.* (1942), 111 Ind.App. 226, 39 N.E.2d 507, the court addressed the question of whether stockholders could attack a completed act approved by the directors in a derivative suit.

"We are not impressed with the appellant's contention that the Murdock Realty Company, having executed the mortgage in suit, is not now permitted to question its legality and, therefore, the minority stockholders are precluded from making such a defense. This argument, followed to its logical conclusion, would forever preclude a corporation, through its stockholders, from challenging the conduct of its corporate officers, when such officers once become enemies of the corporation and embark upon a conspiracy to rob it of its assets."

*Id.* at 238, 39 N.E.2d at 512.

■ A derivative action is always in equity even though the only relief available is damages and the corporation could have maintained an action at law. 13 FLETCHER CYCLOPEDIA CORPORATIONS sec. 5944. In *Merchantile Commercial Bank v. Southwestern Indiana Coal Corp.* (1929), 93 Ind. App. 313, 169 N.E. 91, the court explained the procedural and substantive posture of a derivative action:

"That Lucinda Roberts could have brought the suit as a stockholder, for and on behalf of the corporation, and all of its creditors and stockholders, had the corporation itself, or its receiver refused to do so, is well settled. The rule that controls under such circumstances is thus expressed in 6 Fletcher, Corporations p. 6901: 'Nothing, therefore, is now more surely settled in the law of corporations than the doctrine that any unauthorized act or contract by the directors or a majority of the stockholders of a corporation, which will destroy the existence of the corporation or render it unable to perform its functions, or any misapplication or diversion of assets to purposes not authorized by its charger, even though all other stockholders may consent, is a breach of trust towards a dissenting stockholder, against which he is entitled to relief in equity. Therefore, in the absence of estoppel and if he cannot obtain relief through the corporation or its officers, any stockholder may maintain a bill in equity in his own name to enjoin a waste, misapplication of diversion of its assets, or to enjoin or set aside ultra vires acts or contracts which will result in such a waste, misapplication or diversion, or which may destroy the corporation or render it unable to carry out its objects.'

It was incumbent upon her, of course, first to seek relief by demand upon the officers of the corporation, or, as in this case, upon the receiver, to bring the action, and then, upon its refusal to act, she could sue. In *Carter v. Ford Plate Glass Co.* (1882), 85 Ind. 180, it was held that the theory upon which the stockholder was permitted to sue was that the company, whose duty it was to bring the action, was in the hands of its enemies,

and therefore could not sue, and so here, it may be said that the company was in the hands of its enemies, and that its officers, if it may not be said that they conspired with others in acts prejudicial to the rights of stockholders, at least acquiesced therein. Pursuing her remedy in regular course, Lucinda Roberts made her demand upon the receiver that he bring suit, and thereupon the receiver, with the authority of the court, complied with the demand."

*Id.* at 326–27, 169 N.E. at 96. *See The Wayne Pike Company v. Hammons* (1891), 129 Ind. 368, 27 N.E. 487; *Dome Realty Co. v. Gould* (1934), 285 Mass. 294, 189 N.E. 66; *Lake Park Development Corp. v. Paul Steenberg Const. Co.* (1937) 201 Minn. 396, 276 N.W. 651; *Stony Brook Lumber Co. v. Blackman* (1936), 286 Pa. 305, 133 A. 556; *Brown v. McClure Newspaper Syndicate* (1957), 183 Pa.Super. 316, 130 A.2d 721; *Watts v. Gordon* (1913), 127 Tenn. 96, 153 S.W. 483. *See also* Ind.Rules of Procedure, Trial Rule 23.1 for procedure on derivative actions.

■ It is clear from the above authorities that derivative actions are permitted under a theory which recognizes that the corporation is in the hands of the enemy who has previously refused to enforce corporate rights. The corporation may not preclude the rights of shareholders by the simple expedience of issuing releases to other insiders. The reaffirmation agreement was entered into after Shareholders' derivative suit was filed and Shareholders were not a party to it. The release given Markstone is not a defense to Fineberg and Hilliard because it was beyond the power of Carmel Bank to defeat Shareholders' action in that manner. Fineberg and Hilliard rely solely on the release to support their motion for summary judgment. Thus, they have not demonstrated an absence of dispute of material fact, and have not demonstrated that they are entitled to judgment as a matter of law.

For the above reasons, this cause is reversed, and the trial court is ordered to overrule Fineberg and Hilliard's motions for summary judgment.

Judgment reversed.

SHIELDS, P.J. and ROBERTSON, J., concur.